Dana v. Buckeye Coal & Coke Co.

---

## JUNIUS DANA

### v.

## BUCKEYE COAL & COKE COMPANY AND R. C. FLOWER.

*Fraudulent Sales—Collaterals by Cashier of Bank at Private Sale—Director.*

Where bonds, which had been deposited with a bank as collateral, were sold by the cashier at private sale to a director of the bank, who was also surety for the debt to secure which the bonds had been hypothecated, for a sum clearly less than their value, *held:* That the sale was fraudulent and void.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Peoria County; the Hon. S. S. PAGE, Judge, presiding.

Mr. JUDSON STARR, for appellant.

Messrs. JACK & TICHENOR, for appellees.

LACEY, J.   The questions presented by this record are: 1. Did the power to appellant given by the Buckeye Coke & Coal Co. to hypothecate the bonds, authorize him to make a contract empowering the pledgee to sell the bonds at public or private sale without notice to the company? 2. Even if such power was included in the agency to hypothecate, was the sale under the circumstances fraudulent? 3. And could the appellant take any greater rights from his alleged purchase and any greater interest in the bonds than would belong to a surety who pays a debt secured by collaterals in case no pretended sale of the collaterals was attempted?

In the view we take of the case it will not be necessary for us to decide whether appellant exceeded his authority in agreeing with the First National Bank of Warren, Ohio, that it should have an absolute power of sale of the collateral bonds even " at private sale without notice." We very much doubt the existence of such right, but the case not having been very fully argued on that point, we will not undertake to pass on that question.   But conceding the full right to make the contract of hypothecation, as he did, was the sale such as can be upheld, under the equitable and just principles of the law? In answering this question, it will be necessary, first, to inquire as to what relation the bank stood in toward the principal debtor as respects the bonds pledged for the payment of the note.   In Sparbank v. Drexel, 12 Bank Register, 450, the court laid down the following rule: " Such a contract, so far as it enables creditors to extinguish their debtor's right of redemption by a sale, like other contracts effecting equities of redemption by a sale, must, like other contracts effecting equities of redemption, be construed benignantly for the debtor—as benignantly for him as may be consistent with the security of the creditors."

And the court further said: " It is an authority to sell at private or public sale   *   *   *   but creditors, in whom such authority is vested, can not exercise it otherwise than under a trust for their creditors' benefit as well as their own.   They

are not to frustrate any just expectation of a surplus by forcing a sale for just barely money enough to secure themselves." This doctrine was approved in Union Trust Co. v. Rigden, 93 Ill. 458. It is also held in Joliet Iron Co. v. Scioto Fire Brick Co., 82 Ill. 548, that a person holding property or securities in pledge, occupies the relation of trustee for the owner, and as such, in the absence of special power to do otherwise, is bound to proceed as a prudent owner would with his own."

The evidence shows, as we think, though it is argued to the contrary by counsel for appellees, that the appellant was a director and stockholder in the bank at the time of the alleged purchase of the collaterals by appellant, and, as such, one of the very parties whose duty it was to see that the trusteeship of the bank was properly carried out, and the cashier was only one of its ministerial officers. The appellant was also bound as surety for the payment of the debt, to secure which the collaterals were placed in pledge, and in case he paid it voluntarily or involuntarily, he would be entitled to subrogation—to rights of the bank in them, with the exception, perhaps, of the power of sale. He could demand and hold them for his indemnity. Instead of paying off the debt and holding the securities for his indemnity what does he do? He goes to the cashier of the bank of which he was a director, and says to him, " I will take those securities for the amount of the debt and interest," amounting to about the sum of $3,000 more than the debt for which he was security. The cashier in an accommodating spirit without another word and without trying to get any more for them, accedes to the proposition and makes the sale, and this is at the very time that appellant was paying other parties principal and interest for a part of the series of the same bonds. The bank made no effort to dispose of its trust property for any better price than the offer of appellant, or for the debtors' interest. From the last of March to the last of April of 1888, about the same time the appellant purchased the bonds in question for so heavy a discount, he purchased the balance of the same series at par and interest as an investment. The bonds were well secured and worth par. It was said by the court in

Litgroves v. Bank, 49 Pa. St. 359, "The private sale to its own officers was worse than none, for it was a suspicious and illegal mode of dealing with the collateral it held in trust." To allow a transaction like this to stand would be to encourage the grossest fraud. We regard the purchase as fraudulent and void and that appellant must be relegated to his rights as surety, and is only entitled to indemnity for the amount of the debt which he paid as surety, which the court below allowed him. We regard the decree of the court below as most appropriate and just; it is therefore affirmed.

*Decree affirmed.*