## LACLEDE NATIONAL BANK, Appellant, v. RICHARDSON, Administrator.

### Division One, May 15, 1900.

1. **Deed of Trust:** NOTICE OF SALE.  When an instrument creating a power of sale does not prescribe the manner of executing that power, the trustee in such case selling at public sale must give definite notice as to time, place, and the terms of sale, and the property to be sold must be described with sufficient particularity to identify it and to invite competition.

Laclede Nat. Bank v. Richardson.

2. ———: ———: AUTHORITY OF TRUSTEE. Such notice must also state the authority by which the sale is to be made.

3. ———: SALE: ADJOURNMENT: TRUSTEE'S DISCRETION. A trustee is charged with the exercise of sound discretion in executing the power with which he is invested. In this case the evidence shows that the trustee sold, at public sale, notes and mortgages having a face value of $40,000, for about one-fifth that sum; that there were only a few bidders present, and that they were compelled by the inclemency of the weather to withdraw into the court house during the sale. *Held,* that under such circumstances, in the absence of an express prohibition in the instrument creating the power, the trustee should have adjourned the sale.

4. **Practice:** POINTS DISREGARDED ON APPEAL. The practice in this State has long been settled that a point not presented and passed upon by the trial court will not be considered on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. P. R. Flitcraft,* Judge.

AFFIRMED.

*Hornsby & Harris* for appellant.

(1) A mortgagee or pledgee may perform such acts as giving the notice of sale, conducting the sale, etc., through its agent. Jones on Mortg., sec. 1861; Hubbard v. Jarrell, 23 Md. 66; Crauston v. Crane, 97 Mass. 459; Singleton v. Scott, 11 Ia. 589; Fogarty v. Sawyer, 23 Cal. 570; Cogan v. McNamara, 18 Atl. Rep. 157; Bryan v. Baldwin, 7 Lans. (N. Y.) 174; Fitzpatrick v. Fitzpatrick, 6 R. I. 64; Waite v. Dennison, 51 Ill. 319; Guinzburg v. Downs Co., 165 Mass. 467; McCutcheon v. Dittman, 48 N. Y. Sup. 360. (2) The advertisement of sale need be in no special form, and is sufficient if it advise the public of the time and place of sale and identify the property to be sold. Colebrooke on Col., Sec. (2 Ed.), p. 215; Perry on Trusts, sec. 782; People ex rel. v. Prescott, 3 Hun. 419; Tyler v. Herring, 19 Am. St. Rep. 288; Powers v. Kueckhoff, 41 Mo. 430. (3) The notice of sale given by plaintiff to defendant and published in the paper was sufficient and reasonable. Colebrooke on Col.

Sec., sec. 331; 18 Am. and Eng. Ency. of Law, 712; Ins. Co. v. Dalrymple, 25 Md. 247; Bryan v. Baldwin, 7 Lans. (N. Y.) 174; Stewart v. Drake, 46 N. Y. 449; Willoughby v. Comstock, 3 Hill (N. Y.) 389; McDowell v. Steele Works, 124 Ill. 491; Fraker v. Reeves, 36 Wis. 85; Brown v. Wood, 9 How. Pr. 497; Stevenson v. Hano, 148 Mass. 616; Guinzburg v. Downs Co., 165 Mass. 467. (4) Mere inadequacy of price is no ground for setting aside the sale. Hammond v. Scott, 12 Mo. 8; Phillips v. Stewart, 59 Mo. 491; Mellon v. McRee, 9 Mo. App. 344; Carter v. Abshire, 42 Mo. 303; Kline v. Vogel, 11 Mo. App. 211; Landrum v. Bank, 63 Mo. 48; Maloney v. Webb, 112 Mo. 575; Learned v. Geer, 139 Mass. 31; Erwin v. Parham, 12 How. 197. (5) Defendant having virtually acquiesced in the sale, must be deemed to have ratified the same, and can not be now heard to complain. Colebrooke Col. Sec., p. 442; Willoughby v. Comstock, 3 Hill (N. Y.) 389; Guinzburg v. Downs Co., 165 Mass. 467; Kelsey v. Bank, 69 Pa. St. 426.

*R. M. Nichols* for respondent.

(1) An action, such as the present, upon a debt secured by collateral, is, in effect, a final settlement, and the pledgee or plaintiff is required to produce, or account satisfactorily for its non-production, all of the collateral pledged. Jones on Pledges, sec. 596; Stewart v. Byler, 98 Pa. St. 80; Bank v. Fant, 50 N. Y. 474; Matson v. Matson, 55 Wis. 452; Lucas v. Harrison, 20 Ill. 467; Colebrooke on Col. Sec., sec. 106. (2) The fifth point, made by appellant in this court for the first time, that "respondent virtually acquiesced in the sale and must be deemed to have ratified the same and can not now be held to complain," is not covered by the exceptions. (3) In the exercise of a reasonable discretion, the sale under the power contained in the collateral note, would be valid, whether made publicly or privately. The discretion given

the trustee to sell "at public or private sale or otherwise at his option," did not change the character of the trustee's duties, as a trustee; his discretion being larger, his duties were larger than an ordinary trust deed for the security of money, which usually prescribes the terms and place of sale, the length of time and the medium through which the notice is to be given, leaving it discretionary with the trustee only as to the medium of advertising and the manner of conducting the sale. Stoffel v. Schroeder, 62 Mo. 147; Thompson v. Haywood, 129 Mass. 403. (4) The referee's findings are sustained by the evidence, which conclusively shows that F. W. Mott, as agent of the bank, in his own name made the sale of the collateral. The power to make the sale is given only to the "Laclede National Bank or its officers." The manner of making the sale was left discretionary with the bank or its officers, and the donees of this power, could act in making the sale, only in person, and not by agent. The sale was made in the name of and by the agent; the attempted delegation was clearly void and the power has not been executed. Perry on Trusts, secs. 408, 779, 602q; Graham v. King, 50 Mo. 23; Howard v. Thornton, 50 Mo. 292; Bales v. Perry, 51 Mo. 452; St. Louis v. Priest, 88 Mo. 612; Singer Mfg. Co. v. Chalmers, 2 Utah, 542; Pearson v. Jamison, 1 McLean, 197; Singleton v. Scott, 11 Ia. 589; Skepworth v. Robinson, 24 Miss. 688; Grover v. Hale, 107 Ill. 640; Ritter v. Calhoune, 8 S. E. Rep. 523; Morris v. Ins. Co., 18 S. E. Rep 843; Sebastian v. Johnson, 72 Ill. 282. (5) The trustee has not exercised a sound discretion in the alleged sale, for the following reasons: (a) Mott was the acknowledged agent of the bank, and his interest was such that he was incompetent to act as auctioneer. Thatcher v. Tracy, 8 Mo. App. 317; Morris v. Ins. Co., 18 S. E. Rep. 843; Long v. Long, 79 Mo. 655; Perry on Trusts, sec. 602v. (b) "If the form of notice and the manner of giving it, are

not prescribed, the mortgagee must give proper notice and in a reasonable manner, and if he fails to do so, the sale will be set aside." Perry on Trusts, sec. 602q; Colebrooke on Col. Sec., sec. 118; Fraker v. Reeves, 36 Wis. 85; Wheeler v. Newbold, 16 N. Y. 392; Stephens v. Bank, 31 Conn. 149. (c) "Where no length of time is specified for the notice required, it must be one which, under all circumstances, is reasonable." Massey v. Snaden, L. R. 4 Exch. 13; Perry on Trusts, sec. 602q. (d) "The principal object of publishing notice of sale is to inform the public generally so that bidders may be present at the sale and a fair price obtained." And it is the duty of the trustee to see that proper notice is given. Perry on Trusts, secs. 602q, 782; DeJarnette v. DeGiverville, 56 Mo. 451. (e) Where the constating instrument "does not fix the place of the sale, the trustee may make it in any place which, in his discretion, he may select, but he must exercise that discretion fairly and prudently." Morris v. Ins. Co., 18 S. E. Rep. 843; Hess v. Dean, 66 Tex. 668. (f) The testimony showed that the trustee did not exercise a wise discretion in selling the property upon a five days' notice at public sale, the notice having failed to attract bidders sufficient for the property sold; that, from the character of the property sold, he should have advertised for twenty days notice and should have advertised by means of hand-bills or catalogues, placed in the hands of real estate agents, brokers and attorneys, and should have given all creditors of the estate personal notice of the sale, and given an opportunity of inspection of the property to be sold before the sale. Montague v. Dawes, 96 Mass. 369; Perry on Trusts, sec. 602q; Morris v. Ins. Co., 18 S. E. Rep. 843. (g) The trustee had the power, if it became his duty to adjourn the sale for want of bidders or for any cause, to prevent the sacrifice of the property. Russell v. Richards, 26 Am. D. 537; Jones on Mortg. (4 Ed.), sec. 1873. (7) The notice is defective, as a notice of public sale, because it fails to state that the sale

would be at public vendue to the highest bidder, and as a notice of public sale or private sale, because it fails to state that the sale would be for cash, or give other terms, or that the sale was made by virtue of power given in the note, and for the further reason that there was no opportunity given for examination and not sufficient time to examine, and no proper description of the property given. Powers v. Kneehoff, 41 Mo. 428; Stewart v. Brown, 112 Mo. 181; Judd v. O'Brien, 21 N. Y. 186.

ROBINSON, J.—The Laclede National Bank of St. Louis presented to the probate court of the city of St. Louis, for allowance against the estate of J. H. Simpson, deceased, its claim based upon two promissory notes made by the deceased in its favor, dated respectively February 6th, and February 15th, 1893, payable to the order of the bank, and due ninety days after date, each for the sum of $20,000. These notes are in the form of what is known as "collateral notes," containing provisions whereby certain personal property is pledged as security for their payment, with power to sell such security in event of non-payment of the notes, and contain the following power of sale: "In default of payment of this note at maturity I hereby authorize said Laclede National Bank, or any of its officers, to sell said collateral at public or private sale, or otherwise, at its option, without notice, and to apply the proceeds to the payment of this note, with all damages, interest, charges and costs. Said Laclede National Bank of St. Louis shall also have the right at any such sale to bid for or purchase said pledged property, or any part thereof, in its own name, and for its own use and benefit." The property mentioned in these notes, as pledged for their payment respectively, was numerous promissory notes secured by several deeds of trust on real estate. Some of these deeds of trust, so pledged, were first liens on the real estate therein described, while others were second, and

still others third liens.    It seems that Simpson during his lifetime was a regular customer of the bank, keeping a deposit there, and that in the course of his dealings with the bank the latter made these loans, taking the notes and deeds of trust as security therefor, and held them at the time of Simpson's death, which occurred on February 23, 1893. After the death of Simpson, the bank employed one F. W. Mott, a real estate broker, to take charge of and attend to the collection of the collaterals in question, placing the entire matter in his hands for the purpose of realizing on them. During the following year Mott succeeded in collecting about $15,000, and thereupon the bank concluded to sell the collaterals remaining uncollected at public sale under the power contained in the notes in question, and directed Mott to proceed accordingly.   On February 16, 1894, written notice was served on defendant Richardson, public administrator in charge of the Simpson estate, that the bank would on the 19th day of February, at 11 o'clock a. m., sell at public sale all the Simpson securities remaining uncollected, at the east front door of the court house in the city of St. Louis.   This notice contained a description of the collaterals to be sold and was signed by the bank itself.   A notice of sale to occur at the same time and place was also published in the St. Louis Daily Post Dispatch on the 15th, 16th, 17th and 18th days of February.   This notice, like the former, contained a description of the collateral securities to be sold, with reference to the book and page of the record of the deeds of trust securing the same, and was signed by "F. W. Mott, agent." The opening paragraph in this notice is in the following words:   "Notice is hereby given that the undersigned will, at the east front door of the court house in the city of St. Louis, Missouri, on Monday, February 19, 1894, at 11 o'clock, sell for the benefit of whom it may concern, the following described promissory notes;" here follows a description of the securities remaining unpaid, formulated in the

manner above indicated. At the time fixed for the sale the president of the bank, Mr. Hoffman and his attorney, J. S. Hornsby, together with Mr. Mott, the agent of the bank, and those in attendance at the sale congregated just immediately outside of the east front door of the court house, and the weather being cold and disagreeable it was suggested that those present repair to the inside of the glass storm doors at the entrance where it would be more comfortable. These doors are temporarily placed at the entrance of the court house during the winter season, and are glazed for a distance of about three feet from the bottom. The printed notice of the sale, as published in the Post-Dispatch, was then read by Mr. Mott, and there, out of view of the passing public, the collateral securities were offered for sale by him, and were all ultimately bid in by the bank at the grossly inadequate sum of $8,825, far below their actual cash value. There were only three or four bidders at the sale, which was conducted by Mott as agent and lasted about thirty minutes. The face value of the collateral notes sold by Mr. Mott amounted to upwards of $40,000. The testimony is conflicting as to the number of persons present at the sale. Some witnesses fixing the number present at fifteen, while others testified that the attendance did not exceed six at the outside. The information given at the sale was very meager. The defendant's attorney, R. M. Nichols, who was present at the sale, on being asked by Mr. Hoffman, president of the bank, if he had anything to say about the sale, replied, in substance, that he objected to the sale being made under the circumstances, but would make his objections to the court thereafter. Previous to the advertisement of the sale there had been several interviews between the prseident of the bank and Mr. Nichols, on behalf of the administrator, touching the collaterals held by the bank, in which it was agreed that the administrator and the bank should act in harmony in collecting these collateral

notes, and that the balance collected, after paying the bank, if any, should be turned over to the administrator. As the result of such interviews, Mr. Nichols testified that he was induced to believe that the bank would not exercise the right to sell given in the collateral notes. After giving the estate credit for the amount for which the securities were sold the bank presented its claim against the estate to the probate court of the city of St. Louis for the balance claimed to be due on the collateral notes, which claim was by the probate court allowed for $21,704.66, with interest at the rate of eight per cent and placed in the fifth class of demands. Thereupon defendant duly appealed to the circuit court, and the cause having been referred to A. N. Crane, to try all the issues, the referee decided that the sale of those securities so made by Mott under the power contained in the collateral notes was void, and required the bank to account for all the notes purchased by it at such sale, finding in favor of the bank only for the amount remaining due after said accounting. The bank filed exceptions to the referee's report, which were overruled by the circuit court, and the bank brings the case here by appeal.

It is conceded that under the power contained in the Simpson notes the bank had authority to sell the securities held by it either at public or private sale. The only question, therefore, presented by this record for adjudication is the validity of the public sale of the sundry notes and deeds of trust held by the bank as security for the loan in question. The referee declared the sale invalid because the printed notice of the sale did not state upon what authority or by virtue of what power the sale was to be made, no reference whatever having been made to the pledge or power under which Mott was acting in making the sale, nor was any mention made of the ownership of the collaterals, nor was it stated upon what terms the sale would be made, whether for cash or on time; besides there was nothing in the published notice

indicating that the sales of these securities was made in behalf of the bank. And further in view of the character and number of the securities sold and the manner in which the same were secured the four days' advertisement was inadequate in point of time to enable prospective purchasers to examine into the value of the securities to be sold.

That the bank held these securities in trust is undoubted. It, therefore, became the imperative duty of the bank, in exercising the rights conferred by the power of sale contained in the collateral notes, to use the utmost good faith.

In Dana v. Buckeye C. & C. Co., 38 Ill. App. 371, in discussing the power of sale contained in a collateral note similar to those here under consideration, the court said: "It is an authority to sell at public or private sale, but creditors, in whom such authority is vested, can not exercise it otherwise than under a trust for other creditors' benefit as well as their own .... That a person holding property or securities in pledge, occupies the relation of trustee for the owner, and as such, in the absence of special power to do otherwise, is bound to proceed as a prudent owner would do with his own." Colebrooke, in the second edition of his most excellent work on Collateral Securities, section 118, thus states the rule: "Such a power given by contract, however, so far as it enables the pledgee to extinguish the right of the pledgor to redeem, will, as other contracts affecting equities of redemption, be construed favorably for the interests of the pledgor, so far as is consistent with the rights of the pledgee, .... and a sale must not be forced for barely enough money to secure the payment of the debt." In 2 Perry on Trusts (4 Ed.), sec. 602o, it is said: "Trustees and mortgagees, in the execution of their powers, must use the utmost good faith toward all parties in interest. This proposition can not be too strongly stated and enforced. They must act impartially for every person who has any rights in the estate..... They

must use every effort to sell the estate under every possible advantage of time, place and publicity. They must exercise every discretion, so far as they have any, in an intelligent and reasonable manner." It devolves upon the pledgee in the exercise of the powers given under the pledge to so conduct the sale as not to sacrifice the securities held by him, and in event the pledgee unfairly or unnecessarily prejudices the rights of the pledgor the sale will be set aside. Again at section 602x, in speaking of the exercise of powers by trustees, the same author says: "They are scrutinized by courts with great care, and will not be sustained unless conducted with all fairness, regularity and scrupulous integrity. . . . .If proper notices of the sale are not given, or if the proceedings are in any way contrary to justice and equity, the sale will not be allowed to stand." Nor will the trustee be allowed to delegate his power or duty in the premises. And where, as in this case, the power of sale is general and no particular form is prescribed or pointed out in the collateral notes of executing the power it became and was the duty of the bank to give such notice in a reasonable and proper manner, and if it failed to do so the sale for that reason might properly have been invalidated. In such case the notice must be certain both as to time, place and the terms of sale, and the securities sold must be described with sufficient particularity to identify the property to be sold and so as to invite competition. [Perry on Trusts (4 Ed.), sec. 602q and 602r.] The purpose of the notice is to advise the public of property to be sold, the time when, the place where, and the terms upon which it will be sold. In the circumstances of this case, we are of opinion, that it devolved upon the pledgee in its notice of sale to refer to or state the power and authority under which the sale was to be made; but it is contended by counsel for appellant that inasmuch as no notice was pro ided for by the collateral notes the bank was at liberty to act as it saw fit in this regard, provided some notice was given to the public of

the sale. This, as already seen, is not the law. The clause authorizing the sale of the securities in question without notice must we think be held to refer to a waiver of notice only so far as the pledgor was concerned, and has nothing whatever to do with a public sale. The latter, as we have seen, could not be made without some due notice to the public. Otherwise what could reasonably be anticipated but a sacrifice of the security for want of bidders duly informed upon the subject?

The power of sale contained in the Simpson notes expressly authorizes the bank or its officers to sell in case of default. There is no question in our mind that in making such sale the bank had the right to act either through its officers or any agent it might designate. A corporation, as is well known, from its very nature is incapable of acting only through the instrumentality of its agents. [Waterman on Corps., sec. 101; N. Y. & N. H. Railroad v. Schuyler, 34 N. Y. 30.] Having decided to sell these securities at public sale it was incumbent on the bank in the printed advertisement to show by virtue of what authority the sale was to be made.

Here was one of the strongest financial institutions in the State seeking to realize on sundry notes and deeds of trust having an aggregate face value of over $40,000. Can it be said that as trustee the power of sale contained in the collateral notes was properly exercised without giving the weight of its name to the transaction, and in making the sale in its own name? In other words, can the sale be said to have been made on behalf or in the name of the bank? The record shows that Mr. Mott advertised and made the sale in his own name, and neither in the notice, nor in conducting the sale was his principal disclosed. The printed notice under which the sale was made was in his own name, signed "F. W. Mott, agent," and says: "Notice is hereby given that the undersigned will, at the east front door of the court

house in the city of St. Louis, Missouri, on Monday, February 19, 1894, at 11 o'clock, sell for the benefit of *whom it may concern* the following described promissory notes." It does not appear from the notice that the bank was making or in any wise connected with the sale of these securities, or that the sale was being made in behalf of the bank, nor is any reference made to the ownership of the securities sold, or pledged, or by whom pledged. These are matters in respect to which the public should have been advised by the printed notice of sale. It is true the bank itself served a written notice on respondent similar to the notice printed in the Post-Dispatch. This notice, however, was neither read at the sale, nor acted upon in making the sale. Although the president of the bank was present at the sale his purpose in attending the sale was to bid the property in for the bank, which he did accordingly. Notwithstanding the presence of the president of the bank, the sale seems to have been conducted throughout by Mott in his own name, without, at any time disclosing his principal. If the advertisement had been in the name of the bank or so framed as to state upon what authority or by virtue of what power the sale was to be made, the public would thereby have been apprised that the bank was seeking to sell certain securities upon which it had loaned money and its known financial standing in the community would doubtless have called more bidders together, and resulted in a more advantageous sale. But the notice as published did not refer to the authority under which the sale was being made, nor point out the owner of the collaterals. Moreover, the bank, in our opinion, did not exercise a proper discretion in attempting to make a sale of this class of securities without first giving the terms upon which the sale was to be made, and describing the securities and deeds of trust to be sold with sufficient particularity and certainty to inform the public of what property was to be sold, so that

prospective purchasers could examine the securities offered. The notice did not state whether the sale would be made for cash, or partly on credit, nor undertake to give the terms upon which it was proposed to make the same, nor was it even stated that the sale would be made at public vendue to the highest bidder. The notice should have given such a description of the securities and real estate covered by the deeds of trust as that they could be identified and examined, the mortgaged premises and their value ascertained. Besides, the prospective bidders were entitled to know whether they would be required to pay cash or part cash and a part on time. In a transaction of this magnitude involving the sale of $40,000 worth of securities the prospective purchasers should have been advised as to the terms upon which such securities could have been bought. It is not reasonable to suppose that the public would attend a sale of that magnitude without knowing the precise terms upon which it would be made; otherwise it might result in a sacrifice of the securities. It was the plain duty of the bank in a sale of this character, in the exercise of a sound discretion, to inform the public in reference to these matters, and having failed so to do, in the circumstances of this case, the sale was of doubtful fairness to the pledgor estate. Neither did the bank exercise a sound discretion in selling these securities when only three or four bidders were present and the weather so inclement that the parties in attendance were compelled to retire within the glazed storm doors of the court house, and there, out of the public view, sell notes and mortgages having a face value of $40,000 and upwards, to itself, for about one-fifth of the actual value of such securities; a sum so grossly inadequate, that the mere statement of it shows, there must have been some mismanagement on the part of the pledgee. While it is true, as a general rule that such sales will not be set aside for mere inadequacy of price, providing proper diligence was used by the trustee in selling; but where, as in this

case, the weather was so inclement that those present were compelled to withdraw inside of the storm doors of the court house, the bidders so few, and the sum offered so low the bank in the exercise of a sound discretion should have adjourned the sale until such time as the same could have been made under more favorable circumstances. Having failed to do so, the sale might for that reason have been set aside.

In discusing the duty of the trustee to adjourn the sale where there were only a few bidders and the sum offered inadequate to the value of the property, Perry on Trusts (4 Ed), section 602u, says: "If an adjournment of the sale is not prohibited by the power, the donee of the power may adjorn the sale to another time and to another place. Such power is implied. Of course it is a discretionary power, and must be exercised in good faith; it may be the clear duty of the trustee to adjourn the sale, and an evidence of bad faith not to adjourn; as, if there are few or no purchasers present and the bids are very low and inadequate to the value of the property." Having power, under the exercise of a sound discretion, it was the clear duty of the bank to adjourn the sale in order to prevent a sacrifice of the securities and obtain a fair price therefor. [2 Jones on Mortgages (5 Ed.), sec. 1873.] The trust relation occupied by the bank toward the pledgor made it incumbent upon the former to obtain the best possible price and to use every reasonable means to obtain the full value of the pledged property. The condition of the weather and the absence of any considerable number of bidders rendered an adjournment necessary in order to prevent a sacrifice of the securities.

In view of the character of the securities sold, consisting of numerous notes secured by sundry deeds of trust on different lots of land, we do not think the bank exercised a proper discretion in selling on four days' notice. The notice given was wholly inadequate to enable prospective purchasers to investigate into the value of the securities offered.

Laclede Nat. Bank v. Richardson.

In the sale of the collaterals in question the amount to be realized therefrom is governed to a great extent at least by the value of the property embraced in the deeds of trust securing the same; consequently time and opportunity should have been given for an examination of the notes and property covered by deeds of trust securing the same. It was expecting too much, within the four days given, to examine all these matters, and it certainly can not be claimed any prudent person would have sold similar securities on such short notice, owned absolutely by himself.

Counsel for appellant argues that respondent, by his attorney, was present at the sale and made no objection thereto, and consequently can not be heard to complain. This point was not made in the court below but is raised for the first time here. The practice in this State has long been settled that a point not presented and passed upon by the trial court will not be considered by the appellate court. If, however, this question was properly before the court for adjudication the point would have to be ruled against the appellant, as the testimony shows that counsel for respondent in the presence of those in attendance at the sale openly protested against the sale being made, by announcing that he would present his objection thereafter to the court, thereby distinctly negativing any acquiescence in the sale then about to take place, and it must have been distinctly understood by the officers of the bank that the respondent, as he had a right to do, questioned appellant's right to make the sale under the circumstances. Having indicated to those concerned his opposition to the sale, he can not be said to have acquiesced in the subsequent proceedings, nor was he required to state his specific objections thereto, especially where he was not asked so to do. Moreover, it is not claimed that the bank was misled by any acts or conduct of the respondent or his attorney.

For the reason indicated the judgment of the circuit court will be affirmed. All concur.