### ORIENTAL BANK OF NEW YORK v. WESTERN BANK & TRUST CO.

(Court of Civil Appeals of Texas. Dallas. Jan. 20, 1912. Rehearing Denied Feb. 16, 1912.)

1. PLEADING (§ 205*)—GENERAL DEMURRER—PLEA IN RECONVENTION.

Where a creditor of defendant insolvent bank intervened to prove a balance due on notes for which collaterals had been pledged, a plea in reconvention by defendant's receiver, alleging that the collaterals were worth $65,000 at the time intervener sold the same for $10,000, and alleging various reasons why the sale was not in good faith, nor for a fair consideration, was sufficient in law and not subject to a general demurrer.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 205.*]

2. PLEDGES (§ 31*)—SALE OF COLLATERALS—INADEQUATE PRICE—CONVERSION.

Defendant bank owed intervener, a New York bank, $47,429.50, for which collaterals worth $60,000 had been deposited. Defendant being in financial difficulties, intervener refused to carry the loan further, and without notice to defendant had the collaterals sold in bulk at auction for the benefit of whom it might concern, the advertisement not stating that the sale was being made by the bank or on its behalf, and no reference was made to the ownership of the securities. They were purchased by intervener for $10,000, though certain pledged stock of an Eastern trust company was alone worth $12,500 at the date of the sale. Intervener refused to permit a redemption because it was the holder of certain of the stock of defendant on which it was expected it would sustain a loss, and thereby attempted to recoup itself therefrom by obtaining the collaterals at an inadequate price. *Held*, that such sale and intervener's subsequent assertion of absolute ownership of the collaterals was a conversion and authorized suit for the value thereof without tender of payment of the loan.

[Ed. Note.—For other cases, see Pledges, Dec. Dig. § 31.*]

3. PLEDGES (§ 55*)—CONVERSION OF SECURITIES—INTEREST ON DEBT.

Where, in a suit to recover the balance of a debt, defendant claimed a conversion of pledg-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

ed collaterals and was sustained, but no tender was made of the balance of the debt, the pledgee was entitled to recover interest on such balance down to the date of the trial.

[Ed. Note.—For other cases, see Pledges, Dec. Dig. § 55.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by E. E. Waller and others against the Western Bank & Trust Company, in which the Oriental Bank of New York intervened to recover an alleged balance due on certain notes after applying the proceeds of a sale of collaterals. From a judgment in favor of L. C. McBride, receiver of defendant Western Bank & Trust Company, against intervener, it appeals. Modified and affirmed.

J. J. Eckford and Crane & Crane, for appellant. L. C. McBride and Cockrell, Gray & Thomas, for appellee.

CHARLTON, Special Chief Justice. Appellant intervened in the case of E. E. Waller et al. v. Western Bank & Trust Company, pending in the district court of Dallas county, Tex. It was alleged in said intervention that defendant, Western Bank & Trust Company, executed and delivered to the intervener a certain promissory note on the 21st of December, A. D. 1907, for the sum of $25,000. That on the 31st of December, A. D. 1907, a second note was executed by the said Western Bank & Trust Company and made payable to the intervener for $25,000. The first note was due and payable on the 21st day of January, A. D. 1908, and the second was due and payable on the 19th of February, A. D. 1908. Both notes were made payable to the order of the intervener, at its bank at 182–184 Broadway, New York.

It was alleged by the intervener that the said Western Bank & Trust Company, contemporaneously with execution of said notes, deposited with intervener as collateral security for the payment of said notes the following property, to wit: 90 bonds, Nos. 1 to 90, inclusive, Cleburne Gas & Electric Company, $500 each; note of M. P. Exline Company, due January 1, 1908, for $5,000; note of Finks Manufacturing Company, due January 10, 1908, for $2,000; stock certificate No. 70, Union Trust Company of New Jersey, par value $10,000. That by terms of said two notes, the intervener was authorized, upon their nonpayment, to sell, assign, and deliver the whole or any part of the above-described securities at any broker's board, or at public or private sale, at the option of said intervener, without notice or advertisement, which were expressly waived. It was further provided that, if such securities were sold at public sale, the said intervener may itself purchase the whole or any part thereof, free from any right of redemption on the part of the defendant, said right of redemption being waived. It was further alleged that after default in the payment of the said notes, intervener, who is appellant in this appeal, did in pursuance of the terms and provisions of the said two notes, on the 15th of July, 1908, sell all said securities at public sale, and the intervener was the purchaser for the sum of $10,000; that the costs and the expenses of the said sale were $68.25 and the net proceeds amounting to $9,931.75 were credited upon said note maturing January 20, 1908.

The appellee, L. C. McBride, receiver of the Western Bank & Trust Company, filed a plea in reconvention to said intervention of appellant, and attacked the sale of the said securities on grounds of inadequacy of price and irregularities at said sale. It was alleged that the securities were of the value of $65,000 at the time of the alleged sale, and that they were not sold in accordance with terms of collateral agreement; that no description of the property was given, and that all of the property was sold in a lump, and it was not present at the sale, and the auctioneer did not have possession of the said securities at the sale, and the purchase was not in good faith nor with fair consideration, and was made for a grossly inadequate price by a trustee when it had full notice that a single piece of the collateral would sell for more than the amount bid; that the property was advertised as being sold for whom it may concern, without disclosing the ownership of said property and the amount of indebtedness against it, or where property covered by the securities was located; that the purpose of the sale was to divest the title out of appellee at a grossly inadequate price, and to vest it in the appellant, and was not made in good faith. Appellee prayed that the sale of the collaterals be set aside, and that he be permitted to redeem said collaterals by paying the amount that was due on the 16th day of July, 1908, without interest, and that appellant be required to account for the principal of any of said collaterals that has been collected, together with the interest and the dividends thereon from the date of the alleged conversion and all interest collected on the Cleburne bonds and on the Union Trust Company stock. It was alleged that the appellant had collected the Exline note in full, and had collected or had failed to use diligence to collect the Finks note. It was further alleged that the receiver of appellee was ready and willing and able to redeem all of said collateral at such time and such terms as the court may prescribe, and asked the privilege of so doing, and if it shall appear that intervener has disposed of said collateral, then appellee prays that he have judgment canceling the original debt due said intervener, and for $40,000 excess of the value of said collaterals appropriated and the in-

terest thereon since July 16, 1908, and for general and equitable relief. On the 27th of March, 1911, the case was tried without a jury, and judgment of the court was that the intervener take nothing by his suit, and that the appellee have judgment against the intervener, who is appellant herein, for $24,-108.70, being the difference between $71,-538.20, the value with interest of the collateral wrongfully appropriated, and $47,429.50 due intervener on its notes, July 16, 1908.

[1] Under appellant's first 27 assignments of errors, the propositions are made that the appellee's plea in reconvention is insufficient in law and is subject to a general demurrer.

[2] In the opinion of the court a good cause of action is stated, and the assignments are overruled.

[3] Appellant's twenty-eighth assignment is as follows: "The court erred in rendering judgment for the appellee, L. C. McBride, as receiver of the Western Bank & Trust Company, because the evidence shows that the title to the collateral pledged to the appellant was legally divested out of the Western Bank & Trust Company, and that said receiver had no right, title, or claim thereto or therefor." This assignment denies the right, title, or claim of appellee to said collateral, and asserts absolute title to the same in appellant, by virtue of the sale made by appellant as pledgee, July 15, 1908, at which sale appellant bid in the property for $10,000 and credited the amount on its indebtedness. The trial court found that at date of sale there was due the appellant $47,-429.50, and that the value of the collaterals sold exceeded $60,000 and the evidence supports the finding. The property sold brought one-sixth of its value, and the trustee bought at its own sale, credited the bid of $10,000 on the $47,429.50 indebtedness, and assumed absolute ownership of the said collateral, declared the bailment at an end, and denied the appellee's right of redemption. The price paid was grossly inadequate. It is well settled that the mere inadequacy of price will not warrant a court of equity in setting aside a sale in other respects unexceptional. But when the inadequacy is such as to arouse suspicion of unfairness, or together, with other circumstances, is such as to shock the moral sense, and particularly when surrounded by indications of hardships and unfairness, the sale will be set aside. Rorer on Jud. Sales (2d Ed.) pars. 1087, 1095. On the 28th of April, 1908, appellant wrote a letter to appellee that stock of the Union Trust Company of New Jersey, in amount $10,000, was worth approximately $12,500. The letter also stated that at the present moment there is practically no market value for any bank stock in New York City. On July 15, 1908, appellee at Dallas, Tex., wired to appellant as follows: "Oriental Bank, New York. Think can get approximately one hundred and twenty-five

for Union Trust Stock with you as collateral, favor accepting. Are you willing? Answer. L. C. McBride, Recr." This was received in New York on the 15th of July, but after the sale had been made. There was no answer to the telegram. June 22, 1908, appellee was notified that the collateral would be sold, if the loans were not paid at once, but no date of sale was fixed. In answer to this the appellee begged for indulgence, and stated that the collaterals "were choice securities and ought to bring practically par at this time." The letter also stated that the Oriental Bank had been exceedingly lenient, but asked for a little while longer and for an opportunity to work out the indebtedness. This letter was answered on July 6, 1908, saying that the bank was not in a position to carry the loan longer, and would be forced to take some action, but no date was named for the foreclosure. Appellee had no notice of the sale, except as contained in the above correspondence. When the above telegram of July the 15th was sent, he did not know of the intended sale on that day. The appellant wired appellee on July the 16th that the collateral sold at auction on the 15th as advised. Appellee, on receipt of this, asked by wire as follows: "To whom and for how much were collaterals sold? Will you not secure the cancellation of the sale upon payment of what was due? Answer." On July 17th, appellant wrote as follows: "The collaterals were sold under the directions of the advisory committee of this bank yesterday, the 15th inst., and were purchased for account of the Oriental Bank at $10,000, proceeds of said sale having been credited on the note less expenses thereon and due advise has been sent you of same. In view of the fact that we have carried this matter for so long a time, and no attention has been given it, and in further view of the fact that the bank is a holder of the stock of the Western Bank & Trust Company upon which it would undoubtedly suffer a loss, they were not disposed to cancel the purchase."

The evidence shows that the Union Trust Company stock of the par value of $10,000 was alone worth $12,500 at the date of sale, and that the appellee knew of its value, and bid in $60,000 worth of securities for $10,-000, and that the purpose of the sale and purchase was to make the appellant whole on what it would lose as a stockholder in the Western Bank & Trust Company. The interest of the cestui que trust was sacrificed by the trustee, in order that the trustee could obtain an advantage at the expense of the cestui que trust. The right of the pledgee to sell at public sale, without notice, and to purchase at the said sale, existed in this case by legal contract. This was a great power vested in the trustee, and he should have taken great care in the exercise of it that he acquired no right, and gained no personal advantage, touching the subject-

matter of the trust, that was unfair and antagonistic to the pledgor. The power of sale should have been exercised with a view to the interests of the pledgor as well as the pledgee and the sale should not have been forced for $10,000, when the securities were known to be worth much more than that amount. Jones on Pledges (2d Ed.) § 631b.

Under the contract of sale, the pledgee has the power to sell at public or private sale, but it was provided in said contract that the said pledgor could not purchase the collateral unless it was sold at public sale. Notice of the sale of the collateral was advertised in the city of New York and in the county of New York in the New York Daily Tribune one time on July 14th by the auctioneer, and in the Evening Post and New York Times on the 13th of July, 1908, by Adrian H. Muller & Son, auctioneers. The property in each paper was advertised to sell, "For account of whom it may concern." It did not appear from the published notice that the sale was being made by the bank, or in its behalf. No reference was made to the ownership of the securities or by whom pledged. If the advertisement had been in the name of the bank, or had stated by virtue of what power the sale was to be made, the public would have been apprised that the bank was seeking to sell certain securities upon which it had loaned money, and its known financial standing in the community would doubtless have called more bidders together, and resulted in a more advantageous sale. Laclede National Bank v. Richardson, 156 Mo. 270, 56 S. W. 1117, 79 Am. St. Rep. 528; Hagan v. Continental Nat. Bank, 182 Mo. 319, 81 S. W. 171.

A private sale, fairly conducted with a view of obtaining the best possible price for the securities, would have certainly realized more money. The resort to a public sale was evidently done to allow the trustee to buy at its own sale for an inadequate price. The securities were not present at the sale and were not open to inspection. Tiedeman on Sales, § 261. The property was not sold in separate parcels, but in bulk. Jones on Pledges, § 739; Fitzgerald v. Blocker, 32 Ark. 742, 29 Am. Rep. 3. We think the price bid, the circumstances, and irregularities attending the sale justify the setting it aside, and the judgment of the court below in that respect is approved.

We hold, however, that the appellant had the right to have its debt, including principal and interest down to the date of the trial, set off against the recovery of appellee. Soell v. Hadden, 85 Tex. 182, 19 S. W. 1087. And that the assertion of appellant of absolute ownership of the collaterals was a conversion of the property and authorized the suit without tender of money in payment of the loan. Watts v. Johnson, 4 Tex. 311;

Luckett v. Townsend, 3 Tex. 119, 49 Am. Dec. 723. The tender required before bringing suit had been dispensed with, but there has been no tender of payment of the loan in money before or after the suit that would stop the running of interest on the debt evidenced by the two notes of $25,000 each, owned by the appellant. The court below allowed interest to the intervener to July 16, 1908, and found the amount due the intervener on its notes, principal, and interest on July 16, to be $47,429.50. To this should be added the interest from July 16, 1908, until March 27, 1911. The amount due the intervener down to the date of the trial was $52,293.35. This, deducted from the value of the collateral fixed by the court at date of trial at $71,538.20, would leave the sum of $19,244.85. We think the judgment of the court below ought to have been for the sum of $19,244.85. The judgment is reformed and rendered for the sum of $19,244.85, and in all other things is affirmed.