## EPPERT *v.* LOWISH.

[No. 13,412.  Filed November 15, 1929.  Rehearing denied January
31, 1930.  Transfer denied April 4, 1930.]

*Charles E. Henderson, Laurens L. Henderson* and *Henry W. Moore,* for appellant.

*E. F. Branch, Ralph K. Lowder* and *Sol H. Esarey,* for appellee.

REMY, J.—Action by appellant against appellee to recover damages for alleged conversion of certain bonds. Complaint in two paragraphs. Material averments of the first, necessary to be considered, are, in substance, as follows: Appellant, a resident of the city of Terre Haute, was the owner of 45 negotiable bonds, of the face value of $1,000 each, issued by the Eureka Block Coal Company, and secured by mortgage on the company's tangible property; on June 6, 1923, he borrowed from the National City Bank of Indianapolis the sum of $14,850.41, for which he executed his promissory note, with appellee, a resident of Indianapolis, as surety, and as additional security, deposited with the bank 25 of the bonds; on September 29, 1923, appellant borrowed of appellee $16,000, for which he gave his promissory note, and, as collateral security, delivered to appellee the remaining 20 of the mortgage bonds; in negotiating each of the loans, and as a part of the transaction, there was a

written collateral agreement, which, among other things, provided that after maturity, and upon certain other contingencies, the pledgee might sell the collateral "at any public or private sale, without advertising the same, or demanding payment, or giving notice, and with the right to the payee and assigns themselves to be the purchasers, when sale is made at broker's board or public sale"; the first note not having been paid at maturity, the bank surrendered to the Eureka Block Coal Company five of the bonds and collected the interest on all the bonds held by it as collateral, total received, amounting to $6,240, being credited on the note, which was then taken up by appellee, to whom it was assigned by the bank without recourse, and to whom the remaining 20 bonds held by the bank as collateral were delivered; on April 18, 1924, appellant, having learned of the transaction, advised appellee by letter that he was ready to pay the first note, and requested that it be sent, for that purpose, to one of two banks in the city of Terre Haute, which was not done; whereupon, appellant sent a representative to Indianapolis to confer with appellee and locate the bonds; but neither appellee nor the bonds could be found; on April 29, 1924, appellee caused to be published for three and one-half days in the Indianapolis Commercial, a newspaper of general circulation in that city, a notice that at 10 o'clock a. m. on May 3, 1924, at his office in the National City Bank Building in Indianapolis, his attorney, "pursuant to authority given by certain collateral pledges," would sell "at public auction to the highest bidder for cash, 39 coupon bonds of the Eureka Block Coal Company, of the principal sum of $1,000 each bearing interest at six per cent per annum"; that appellant was given no personal notice of the sale, and no demand was made upon him to redeem; that at the sale, held pursuant to the public notice, appellee's attorney being the auctioneer, the bonds were

purchased by appellee for the sum of $15,000, when, in truth and in fact, they were at all times worth the face, plus accrued interest, or a total of $26,000, and were known by appellee to be worth that sum; that the defective notice and the manner in which the sale was conducted were for the purpose of defrauding appellant; that the published notice of sale was insufficient, defective and illegal, in this, that no mention was made therein of the ownership of the bonds, nor that they were secured by mortgage, and that considering the character of the collateral to be sold, the period of time fixed by the notice was too short, and that the notice of sale was intentionally so worded as to depreciate the value of the bonds, in that it showed, without explanation, that certain interest coupons had not been paid when due; that the place fixed by the published notice for the sale, and where the sale was made, was not a proper place for the public sale of such property, but was a private office where appellee conducted his wholesale coal business, a place to which but few of the public entered; that the defective and insufficient notice was given by appellee and the sale conducted in the private office of appellee, all as aforesaid, for the sole fraudulent purpose, on the part of appellee, to procure title to the bonds for a sum which was much less than their true value; that, as soon as appellant learned of the terms of the sale and the manner in which it had been conducted, he offered to redeem all of the bonds and to pay the obligations in full, but appellee, claiming that the sale of the bonds was valid, and claiming the absolute ownership of the bonds, refused to accept the offer; that, prior to the commencement of this action, appellee did permit appellant "to take up, for $10,000, the sixteen bonds attached to the first note, but would not surrender to him the note," all of which "was done in furtherance of his scheme to defraud, hoping thereby to appease" appellant "and lull

him to sleep as to the remainder of the bonds, and thereby appropriate them to his own use, under the illegal sale"; that, since the unlawful sale, appellee has presented, and there have been redeemed at face value with interest, a large number of the bonds; and that, by reason of the facts alleged, appellant has wrongfully converted the bonds to his own use, to the damage of appellant in the sum or $10,000, for which sum judgment is prayed.

The second paragraph is in all respects the same as the first, except that the allegations charging fraud are omitted.

Appellee separately demurred to each paragraph for want of sufficient facts. The demurrers were sustained, and, appellant having refused to plead further, judgment was rendered in favor of appellee.

The rulings of the court on the demurrers are assigned as error, and present the only question for review by this court.

It is contended by appellee that the allegations of fraud in the first paragraph of complaint add nothing thereto, and that, in the absence of those allegations, the facts pleaded in each paragraph show that, in the sale of the collateral, appellee did nothing except what was his right to do under the pledge agreement. It is apparent from the record that such was the holding of the trial court.

In our view, it will be unnecessary to consider the allegations of fraud. Disregarding those averments, the one question for decision is whether the remaining facts as averred in each paragraph show a valid sale of the bonds by appellee.

The contention of appellant is that the public sale of the bonds as conducted by appellee was neither authorized by the pledge agreement, nor in accordance with the law governing public sales; was not a good faith sale so as to pass title to appellee, and that the refusal of

appellee to permit appellant to redeem the bonds, under the circumstances alleged in each paragraph of complaint, amounted to a conversion.

One who holds property as pledgee to secure the payment of a note holds the same as trustee for the pledgor, and his rights as to any sale or purchase of the pledged property are limited by the contract; and toward the pledgor he owes the utmost good faith. The Supreme Court of Missouri, in discussing the duties of a pledgee in connection with a sale by him of the pledged property, under a pledge agreement, correctly states the law to be: "It devolves upon the pledgee in the exercise of the powers given under the pledge to so conduct the sale as not to sacrifice the securities held by him, and in the event the pledgee unfairly or unnecessarily prejudices the rights of the pledgor, the sale will be set aside." *Laclede Nat. Bank* v. *Richardson* (1900), 156 Mo. 270, 56 S. W. 1117, 79 Am. St. 528. It is also the law that the pledge contract, in so far as it affects the pledgor's equity of redemption, will be construed by the courts favorably to the pledgor, the construction, of course, being consistent with the rights of the pledgee. Colebrook, Collateral Securities §§89, 118.

In the case at bar, the pledge contract authorized a sale of the bonds by pledgee "at public or private sale, without advertising the same, or demanding payment, or giving notice." The only provision for public sale by pledgee is "without advertising." Whether a sale of the bonds at public auction without advertisement would have been a valid sale, it is unnecessary to decide, for the bonds were not so sold. Appellee elected to sell at public sale after public notice, and such a sale was not within the power given him by the pledge agreement. Appellee having elected to sell the bonds at public sale with public notice, it became

necessary that notice of the sale be given in the usual and customary manner for sales of pledged property. *Foote* v. *Utah Savings Bank* (1898), 17 Utah 283, 54 Pac. 104; *Mechanics, etc., Nat. Bank* v. *Pingree* (1924), 40 Idaho 118, 128, 232 Pac. 5. It became the duty of appellee not only to give the time, place of sale and authority under which the sale was to be made, but to give sufficient time, and to set forth in the notice such facts, as would enable the public to make an intelligent investigation of the title and value of the bonds to be sold. *Laclede Nat. Bank* v. *Richardson, supra.*

The notice of sale given by appellee, as alleged in each paragraph of complaint, does not mention the owner of the property to be sold, nor does it state that the bonds are secured by a recorded mortgage covering all of the property of the maker; and the residence of the maker is not given. The first insertion of the notice in the newspaper carrying the same was on April 29; the sale was to take place on the morning of May 3—less than four days—and the notice carried the information, without explanation, that certain past-due interest coupons had not been paid. The attention of a wise investor would not have been attracted by this notice because of the meagre information as to the bonds; and the fact that interest coupons were unpaid would have aroused suspicion. On the other hand, if the published notice had given the name of the owner, and had stated that the maker of the bonds was a corporation with its principal offices in the city of Terre Haute, where its property was located, that the bonds were secured by mortgage on the property of the corporation, if explanation as to the delinquent interest had been made, and if sufficient time had been given in which to make inquiry as to the financial standing of the company which had issued the bonds, all as a pledgee acting in good faith should have done, then an intelligent person

looking for an investment could have learned upon investigation that the property to be sold was of the value of $25,000. Taking into consideration the value and character of the property to be sold, the notice of the sale was too meagre and indefinite, and the time from the appearance in the newspaper of the first publication of notice to the day of the sale was wholly inadequate. It follows that each paragraph of complaint states a cause of action for conversion, and that the court erred in sustaining the demurrers.

Reversed, with instructions to overrule demurrer to each paragraph of complaint, and for further proceedings consistent with this opinion.

## On Petition for Rehearing.

REMY, C. J.—In his petition for rehearing, it is urged by appellee that neither paragraph of complaint states a cause of action for conversion, for the reason, as claimed, that neither contains averments showing ownership of the bonds at the time of the alleged conversion. There is no merit in the contention. It is not the law that in an action for conversion the complaint must always show by direct averment that the plaintiff owned the property at the time; it is sufficient if, in the complaint, facts are well pleaded from which ownership at the time of the conversion is necessarily inferred. *Waters* v. *Delagrange* (1915), 183 Ind. 497, 109 N. E. 758. It is directly averred in each paragraph that appellant was the owner of the bonds; that, by written contract, he pledged them to secure payment of certain promissory notes given by him for borrowed money; that, as soon as he learned that the bonds had been sold and the manner in which the sale had been conducted, he offered to redeem all of the bonds; and that he was permitted to redeem part, but not all of them; that immediately after appellant learned of the sale of the bonds, he "came to

the city of Indianapolis, prior to the 12th day of May, 1924, and had an interview with the defendant, and told him he was ready, able and willing to redeem all of these bonds and pay the said obligations, and then and there the said defendant refused him and told him that he had conducted a valid sale of said bonds and purchased them himself, and they were his.'' The manner in which the sale was conducted by appellee is set out in detail. Clearly the facts pleaded show ownership by appellant at the time of the alleged conversion.

Furthermore, the fact, as shown by averments of each paragraph of complaint, that, at the time of the alleged conversion, appellee held the bonds as pledgee of appellant is significant. It has many times been held by the courts, and is well settled, that, where it appears from the averments of a complaint for conversion that the defendant, at the time of the alleged conversion, held the property under a contract of bailment entered into between him and the plaintiff, an allegation as to the ownership of the property at the time of the bailment is unnecessary. *Shellhouse* v. *Field* (1912), 49 Ind. App. 659, 97 N. E. 940, and cases there cited.

Rehearing is denied.