## AUGUSTA MEACHAM

*v.*

## HENRY T. STEELE *et al.*

| 93 | 135 |
| 128 | 107 |
| 128 | 132 |
| 93 | 135 |
| 33a | 612 |
| 93 | 135 |
| 151 | 326 |
| 93 | 135 |
| 157 | 481 |
| 93 | 155 |
| 66a | 37 |
| 93 | 135 |
| 165 | 136 |
| 93 | 135 |
| 185 | 218 |
| 93 | 135 |
| 214 | 14254 |

1. PURCHASER—*rights of, as to incumbered property.* The purchaser of lots at a judicial sale under a decree against the owner, where there is a valid deed of trust of record from the owner prior to the time the decree became a lien, takes the same subject to the incumbrance, unless the party for whose benefit the deed of trust was given has done something to make it inequitable to enforce his lien against them.

2. MORTGAGE—*not chargeable with constructive notice of purchaser's deed of the equity of redemption.* A mortgagee whose mortgage or deed of trust is duly recorded before a purchase from the mortgagor, or of his interest on judicial sale, will not be charged with notice of the purchaser's deed when put on record; therefore, if such purchaser seeks to enforce any right or equity upon the hypothesis that the mortgagee had notice of his purchase, he must allege and prove that the mortgagee had actual or implied notice of his purchase.

3. SAME—*right of purchaser to redeem part of premises.* Where one purchases a part of mortgaged premises from the mortgagor, he can not redeem that part purchased by him by paying a just proportion of the mortgage debt. The mortgagee is entitled to retain his lien upon every part of the mortgaged estate until the whole of his debt is paid.

Syllabus.

4. SAME—*part purchased is only secondarily liable.* Where a part of mortgaged premises is purchased from the mortgagor, in equity the unsold portion will be regarded as the primary fund out of which to discharge the mortgage debt, and until that is exhausted no part of the purchased premises can be sold for that purpose, and the mortgagee will not be allowed to do any act that will deprive the purchaser of this right.

5. If a mortgagee in such a case, with notice of the purchaser's rights, buys of the mortgagor the unsold portion of the mortgaged premises, and accepts from him a deed therefor, by which the equitable estate is merged in the legal, it will operate as a discharge of the mortgage debt in the ratio that the value of the premises thus purchased by the mortgagee bears to the total value of the mortgaged estate.

6. So, also, if the mortgagee for any cause executes a release or other conveyance, in fee to the mortgagor of the unsold portion of the mortgaged premises, it will in the same manner operate as a discharge *pro tanto* of the mortgage debt.

7. SAME—*when conveyance of equity of redemption to mortgagee operates as a merger.* On a conveyance of the mortgaged premises by the mortgagor to the mortgagee, if it was not intended to extinguish the mortgage, or if it is necessary for the protection of the mortgagee from intervening liens or claims against the mortgaged premises, a court of equity will treat the two estates as co-existing in the mortgagee.

8. DEED OF TRUST—*effect of conveyance by mortgagor of part of the mortgaged premises to party secured, upon the trust property.* A conveyance by warranty deed by the grantor in a deed of trust to the party whose debt is secured by the same, of a part of the trust property, passes nothing but the equity of redemption, and invests the grantee with the entire equitable title, but not of the legal title, which remains in the trustee. The grantee, in such case, doubtless has the right to require a conveyance of the legal title from the trustee, but if the grantee does not require such conveyance, it will not relieve the trustee of the duties assumed by him, and such grantee may still require the trustee to execute the trust.

9. The conveyance by the grantor in a deed of trust of six of fourteen lots embraced in the trust deed to the party whose debt is secured by the trust deed, will not in any manner affect the right or duty of the trustee to sell the remaining lots embraced in the deed of trust, even as against a purchaser of them under execution against the grantor.

10. SAME—*duty of trustee to protect interest of purchaser of part of the mortgaged property.* A trustee under a deed of trust, in making sale of the trust property, is not only bound to act in good faith in conducting the sale, but also to see that reasonable publicity is given of the time and place, and terms of the sale, with a view of obtaining the best possible price for the property.

His duty alike to the beneficiary and a purchaser of a part of the premises affirmatively requires this.

11. SAME—*parts primarily liable should first be offered.* Where, subsequent to the execution of a deed of trust, the trust property is subdivided into lots, and a third person· acquires the grantor's title and interest in a part of the lots, the trustee in making sale of the property should first offer for sale the remaining lots separately, which are primarily liable for the debt, unless some good reason to the contrary exists, and if they fail to sell when thus offered, they may then be offered and sold as a whole. They should not be offered as a whole in the first instance.

12. TRUST—*when use is executed by operation of law.* Where a person by any means becomes clothed with the legal title to land in which he has no beneficial interest, and with respect to which he has no duty to perform, so that he simply stands seized of the land to the use of another person, the statute will execute the use by annexing the possession to the use, and clothing the latter with the legal title.

13. SAME—*whether a trust or an use.* The true test by which to determine whether the interest of a beneficiary in a given case is a trust, or a mere use which the statute executes, is to look to the instrument creating it to ascertain what duties are imposed on the trustee, and then determine whether or not they have been performed, and if they have not, the trust is still executory, and the statute has not intervened.

14. When the object of a trust becomes defeated, or for some cause performance becomes impossible, and the trust is thereby stripped of its executory character, leaving no duties to be performed with reference to the trust estate, the trust becomes an use and is executed by the statute.

15. When a conveyance imposes upon the trustee active duties with respect to the trust estate, such as to sell and convert into money, or to lease the same and collect the rents, issues and profits thereof, and pay them to the beneficiary, it creates a trust which the statute does not execute.

16. But when the estate is conveyed to one person simply for the use of another, or with the intent that the latter shall have the rents, issues and profits thereof, the conveyance creates an use which the statute executes. ·

17. CONVEYANCE—*not affected by a re-subdivision of the property.* Where a deed of trust is given upon lots in a subdivision of a block, and the description in the trust deed is a matter of record by which the property can be located and found, the power of the trustee to sell upon a default will not be defeated by a re-subdivision of the block.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and the Hon. GEO. W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices.

This was a bill in chancery, filed by appellees, Henry T. Steele and Wear L. Drake, in the circuit court of Cook county, on the 8th day of March, 1877, against Augusta Meacham, Robert W. Meacham, Augusta R. Meacham, his wife, Rebecca Miner, and George A. Follansbee. The facts in the case, as they appear from the bill and answer, and about which there is no controversy, are in substance as follows:

On the first of·October, 1872, Robert W. Meacham and wife conveyed by deed of trust to George A. Follansbee block 3, except lots from 1 to 5, inclusive, in the town of Park Ridge, in Cook county, Illinois, to secure an indebtedness from Meacham to Rebecca Miner of $883.87, and to Augusta Meacham, his sister, of $2121.33. Robert W. Meacham afterwards re-platted and subdivided block 3, above mentioned, together with other blocks, and by the re-subdivision the part of block 3 included in the trust deed, less a small portion thereof embraced in the streets and alleys of the new plat, constituted lots from 6 to 20, inclusive, in block 3 in the new subdivision. The trust deed was recorded in the proper office on the 18th of June, 1873. Appellees, on the 24th of July, 1875, obtained a decree in the Superior Court of Cook county against Robert W. Meacham and John J. Lockwood for the sum of $3499.33. On the first of November following lots from 6 to 13, inclusive, of the re-subdivision above mentioned, were sold by the sheriff under said decree, and struck off to Steele at $1500, who received a sheriff's deed therefor on the 26th of February, 1877, which was recorded on the same day.

This purchase by Steele was made on behalf of himself and Drake.

On the 13th of January, 1876, Meacham paid appellees the balance on the decree after deducting amount of bid on lots purchased by Steele. On the 2d of July, 1875, Robert W. Meacham executed to Augusta Meacham a warranty deed for lots 15 to 20 inclusive, in said block 3, re-subdivision, being a part of the same property included in the trust deed

which was recorded on the 23d of the same month. This deed, also embraced considerable other property which is not involved in this controversy.

It is admitted by defendants' answer that this conveyance was made without any consideration and for the express purpose of defeating the lien of appellees' decree.

On the day before this deed was recorded, to-wit, on the 22d of July, 1875, Augusta Meacham, by quitclaim deed, reconveyed this property to Robert W. Meacham, but the same was not recorded until the 13th of January following. On the 19th of May, 1876, pursuant to a notice published for the requisite length of time in the weekly edition of the Chicago Evening Journal, Follansbee sold on the premises, at public vendue, all the lots embraced in the said deed of trust, including the eight lots purchased by Steele, and the same were struck off to and purchased by Augusta Meacham for the sum of $1680, and upon her paying the expenses of the sale he, on the same day, made her a deed for the premises, which was duly recorded on the 25th of the same month.

The trustee's notice of the sale described the property embraced in the trust deed not only as it was described in the trust deed, but also as it is described in the re-subdivision, and it was also conveyed by the trustee by both of these descriptions. So far there is no controversy about the facts. But in addition to this, it is claimed by the bill that appellees had no notice of the sale under the trust deed; that through the collusion of Meacham, Follansbee and appellant, the sale was conducted in such a manner as to elude all vigilance on their part; that by reason of the warranty deed from Meacham and wife to appellant, appellees had been led to suppose that the indebtedness secured by the deed of trust had been discharged; that the weekly edition of the Chicago Evening Journal, the paper in which the notice of sale was published, was an obscure paper with less than fifty subscribers in the city of Chicago, and that for that reason the notice was inserted in it. It is also claimed that the premises were sold for a grossly

inadequate sum, and for these and other reasons asks that the sale be set aside, etc.

A joint and several answer was filed by all the defendants, denying all fraud, collusion or improper conduct. They insist that the property was properly advertised, and sold by the trustee in strict conformity with the provisions of the deed of trust.

A general replication was filed by complainants, and on the 14th of February, 1878, there was a final hearing of the cause upon bill, answer, replication, exhibits, depositions and oral proofs.

The court found the equities with complainants and a decree was entered accordingly.

The decree specially finds that the sale made by Follansbee, as trustee, on the 19th of May, 1876, of the lots in controversy, " was not made fairly and in good faith, and with the intent and purpose of obtaining payment of the indebtedness secured by said deed of trust;" that lots from 6 to 13, inclusive, in block 3 of the re-subdivision, are held and owned by complainants as charged in the bill, and declares the sale, and the trustee's deed in pursuance thereof, void, and sets the same aside as to these lots.

The decree also ordered a reference to the master to take proofs and ascertain the amount, if any, remaining due and unpaid of the indebtedness secured by the deed of trust, and directed the master to state the account between the parties thereto.

And it was further ordered " that upon the coming in and confirmation of the master's report, and the payment by complainants in such time and manner as the court should order, that part, if any, of the amount found by the court remaining due of the indebtedness secured by the trust deed which may be found by the court belonging and appertaining to that part of the premises included in the deed of trust and belonging to complainants be at once and forever thereafter released and discharged from any and all liens under and by

virtue of said trust deed, and that complainants be let into possession," etc.

From this decree Augusta Meacham alone appealed, and the case was heard at the March term, 1879, of the Appellate Court for the First District. The Appellate Court affirmed the decree of the circuit court, and appellant by further appeal brings the record here for review.

Messrs. GARDNER & SCHUYLER, for the appellant.

Mr. J. BLACKBURN JONES, for the appellees.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

It is to be observed, in the first place, that no point is made by appellees with reference to the validity of the deed of trust from Robert W. Meacham and wife to Follansbee, or with reference to the genuineness of the claim secured by it. The good faith of that transaction does not, so far as the evidence is concerned, seem to be in any manner questioned. Indeed, the decree of the circuit court recognizes the fact that this deed of trust was a prior valid incumbrance on the lots in controversy. It follows, therefore, when appellees purchased these lots under their decree against Meacham, that whatever rights they thereby acquired were subject to appellant's deed of trust, unless she had, in the meantime, done something to make it inequitable to enforce it as against them. Assuming that appellant had done nothing to affect her rights under the deed of trust as a prior valid incumbrance, the position assumed by appellees on their purchase was that of one purchasing from a mortgagor a part of the mortgaged premises.

Where there is no controversy as to the facts there can be but little doubt as to the respective rights and duties of persons thus circumstanced. In such cases, where the mortgage has been duly recorded before the purchase the mortgagee will not be charged with constructive notice of the purchaser's deed when put on record. It therefore follows, if the pur-

chaser seeks to enforce any right or equity upon the hypothesis that the mortgagee had notice of his purchase, he must allege and prove that the mortgagee had actual or implied notice of his purchase.

Where one thus purchases a part of mortgaged premises he can not redeem that part purchased by him by paying a just proportion of the mortgage debt. The mortgagee is entitled to retain his lien upon every part of the mortgaged estate until the whole of the mortgage debt is paid. Yet, in equity the unsold portion of the mortgaged premises will be regarded as the primary fund out of which to discharge the mortgage debt, and until that is exhausted no part of the purchased premises can be applied for that purpose. And the mortgagee is not permitted to do any act that will deprive the purchaser of the right to have this primary fund first applied in the discharge of the mortgage debt. Hence it is a familiar rule in equity that if the mortgagee, in a case of the kind supposed, with notice of the purchaser's rights, buy of the mortgagor the unsold portion of the mortgaged premises, and accept from him a deed therefor, by which the equitable estate is merged in the legal, it will operate as a discharge of the mortgage debt in the ratio that the value of the premises thus purchased by the mortgagee bears to the total value of the mortgaged estate. So, also, if the mortgagee, for any cause, execute a release or other conveyance in fee to the mortgagor of the unsold portion of the mortgaged premises, it will in the same manner operate as a discharge *pro tanto* of the mortgage debt.

It appears, as already shown, that the deed of trust from Meacham and wife to Follansbee, to secure Meacham's indebtedness to appellant, included not only the eight lots purchased by appellees under their decree, but also six other lots in the same block. And it is claimed by appellees that the warranty deed from Meacham and wife to appellant, of July 2, 1875, had the effect of stripping the trust created by this trust deed of its executory character so as to leave in the latter nothing

but a dry trust, which, being a simple use, was executed by the statute, and that appellant by this means being clothed with the legal title, her equitable rights under the deed of trust became merged in the legal estate, and the incumbrance thereby extinguished. Conceding this to be so, of course it would follow that the sale subsequently made by Follansbee under the trust deed was without authority and invalid as against appellees.

We fully recognize the doctrine that whenever one person by any means becomes clothed with the legal title to a tract of land in which he has no beneficial interest, and with respect to which he has no duty to perform, so that he simply stands seized of the land to the use of another person, the statute will execute the use by annexing the possession to the use and clothing the latter with the legal title. Yet, conceding this doctrine to its fullest extent, it does not therefore follow that the facts here show a proper case for its application.

Whatever effect the doctrine in question may be supposed to have had upon the right of the trustee to sell the lots embraced in both deeds, there certainly can be no pretence for the claim, on the grounds suggested, that his right to sell the lots included in the trust deed alone was at all affected by the execution of the warranty deed. For since the warranty deed did not include the lots purchased by appellees, or make any reference to them, it was therefore simply impossible for the rights or relations of the parties with respect to them to have been at all affected in the manner suggested by the execution of that deed. But upon what principle can it be claimed that the transfer of the equity of redemption in the six lots included in both deeds will have the effect of changing the character of the trust so as to relieve the trustee of the duty, or deprive him of the right to sell, when requested to do so, as provided in the trust deed? It is true that at law, if the mortgagor conveys the equity of redemption to the mortgagee, the equitable estate will be merged in the legal, and it will operate as a payment of the mortgage debt to the extent of

the value of the mortgaged premises. But in equity it will not necessarily have this effect.

If it was not so intended, or if it is necessary for the protection of the mortgagee from intervening liens or claims against the mortgaged premises, equity will treat the two estates as co-existing in the mortgagee. Conceding for the purpose of the argument, then, that appellant's position was that of a mortgagee having a release of the equity of redemption, it would not therefore necessarily follow that the estates would merge,—for, as we have just seen, that would depend upon the intention, rights and interests of the parties. And when tested by this rule there would be no merger, for it was necessary to keep the two interests co-existing in order to protect appellant from the intervening claim of appellees.

And, moreover, there is not a particle of evidence in this record to show that appellant intended to surrender her lien upon the property embraced in the trust deed. The evidence on this point is all the other way.

But did appellant, upon the execution to her of the warranty deed by Meacham and wife, assume the position of a mortgagee, having a release of the equity of redemption, with respect to the six lots included in both deeds? The answer to this question depends upon whether, as is claimed by appellees, that conveyance so affected the character of the trust as to convert it into a naked use. If so, it was executed by the statute, and the legal estate was at once transferred by operation of law to appellant, leaving no title or interest whatever in Follansbee, the trustee. What was the nature of the interest or estate which passed by the warranty deed? Certainly no part of the legal estate, for that had been transferred to Follansbee. It is evident that nothing passed by it but Meacham's equity of redemption. All that can be reasonably claimed is, that upon the execution of this deed appellant became the owner and possessed of the entire equitable title, and as such she doubtless had the right to require a conveyance from Follansbee, if she desired it; but if she

did not see proper to exercise this right, it certainly did not relieve him from the duties which he assumed in accepting the deed clothing himself with the legal title. If appellant, notwithstanding Meacham's conveyance to her, desired the trust executed according to the provisions of the deed, we can see no good reason why it should not have been done.

What is the test by which we determine whether the interest of the beneficiary in a given case is a trust, or a mere use which the statute executes? Counsel for appellees seems to proceed upon the theory that in all cases where no one but the *cestui que trust* has any beneficial interest in the estate, there the statute will intervene. But this, of itself, is no test at all, for in most of cases the trustee has no beneficial interest in the estate.

The true test, where the trust is an express one, as in this case, is to look to the terms of the instrument creating it to ascertain what duties are imposed on the trustee, and then determine whether or not they have been performed, and if it appears that they have not, the trust is still executory and the statute has not intervened.

Often, in cases of this character, the objects of the trust become defeated, or for some cause or other performance becomes impossible, and the trust will thereby become stripped of its executory character, leaving no duties to be performed with reference to the trust estate. In such cases the trust becomes a use, and is executed by the statute. But nothing of that kind occurred in this case. Appellant's debt was still unpaid, the lots in question had been conveyed to the trustee for the express purpose of raising money to pay it. The trustee had assumed the duty of making a sale of the lots whenever requested to do so for that purpose, and nothing appears in the record to show that he was ever released by her or any one else from the performance of that duty.

We repeat, the mere fact that the *cestui que trust* has the entire beneficial interest in the trust estate is no test in determining whether the beneficial interest is a trust or a use. To

10—93 ILL.

hold so would be to abolish all distinction between a trust and an use. Where the conveyance imposes on the trustee active duties with respect to the trust estate, such as to sell and convert it into money, or to lease the same and collect the rents, issues and profits thereof, and pay them over to the beneficiary, it creates a trust which the statute does not execute.

But, on the other hand, where the estate is conveyed to one person simply for the use of another, or to the intent that the latter shall have the rents, issues and profits thereof, the conveyance creates an use which the statute does execute, for in such cases the trustee has no duty to perform with respect to the estate conveyed.

Testing the case before us by these rules, appellant's interest in the lots in question did not by reason of Meacham's warranty deed to her become a mere use, within the meaning of the statute of uses, and was consequently not executed by it.

It is insisted also, by appellees, that by reason of the re-subdivision of the property embraced in the trust deed, there ceased to be any such property as that described in it; that parts of it had been converted into streets and alleys and that the appearance and character of the remainder were so completely altered and changed that it could not be regarded as the same property, and that therefore the trustee had no right to sell it. There is nothing in the point. No authority is cited in support of it, and it is manifestly against reason and common justice.

The old description of the property as contained in the trust deed was still a matter of record, and by it the property might well be located and known, notwithstanding the re-subdivision, and appellees, at the time of their purchase, had notice of appellant's rights and could not have been misled with respect to them by reason of such re-subdivision. We repeat, there is nothing in the point.

There is really but one question in this whole case that presents any serious difficulty, and that is with respect to the validity of the trustee's sale.

Upon appellees purchasing under their decree a part of the lots embraced in the trust deed, the remaining unsold lots, as we have already seen, became the primary fund for the payment of the indebtedness secured by that instrument. Appellees therefore had a direct interest in having the lots constituting this fund sold in such a manner as to bring the best possible price, so as to relieve their own from the incumbrance of the trust deed. It was just as obligatory on the trustee, in performing the duties of the trust, to protect their interests as appellant's, and he was not only bound to act in good faith in conducting the sale, but also to see that reasonable publicity was given of the time, place and terms of sale, with a view of obtaining the best possible price for the property. His duty, alike to appellant and appellees, imperatively demanded this at his hands. In fixing the place of sale, in selecting the paper in which to publish the notice, in determining the hour of sale, and in conducting the same, the trustee in cases of this character should keep constantly in view the best interests of all parties having a claim upon the property to be sold, and conscientiously endeavor to make it bring the best possible price. A trustee is required to use that prudence and care in discharging the duties of a trust of this kind that a reasonably prudent and discreet man ordinarily exercises under like circumstances with reference to his own property. Has it been done in this case? Can it be said there is no well founded reason for questioning the good faith of the parties who controlled and conducted the sale in the present case?

It is admitted by defendant's answer, as already observed, that the warranty deed executed by Meacham and wife to appellant was made for the express purpose of preventing the decree which appellees were then about to obtain, from becoming a lien upon Meacham's property, and the attending circumstances show this admission to be true. This deed, though dated the 2d of July, 1875, was not acknowledged or recorded till the 23d of the same month, just one day before appellees obtained their decree.

148            MEACHAM *v.* STEELE *et al.*            [Sept. T.

Opinion of the Court.

On the 22d, the day before this deed was acknowledged and recorded, appellant quitclaimed the same property back to Meacham, though the deed was not recorded until the 13th of January, 1876, the very day on which appellees claim that Meacham paid the balance on the decree.

If Meacham had any other property, incumbered or otherwise, that was not included in the warranty deed to appellant of July 2, 1875, except the eight lots purchased by appellees under their decree, the record does not disclose it.

Why was all of his property embraced in this deed except the eight lots? Was it to force appellees to buy them at a liberal price, and afterwards so conduct the sale under the deed of trust as to defeat their title under the purchase? And was the quitclaim deed reconveying this property to Meacham kept from the record in furtherance of the same scheme?

Whatever the real truth may be with respect to the good faith of the sale under the trust deed, it can not be denied that appellant, acting in concert with Meacham, has been guilty of committing a palpable fraud upon appellees with respect to their claim against the latter; and in view of all the circumstances in the case, without further descending into the details, the trustee himself is not free from a well grounded suspicion that he has, in the performance of his duties, lent himself as an instrument to further their fraudulent purposes. At any rate the unquestioned fact that appellant, to whom the property was struck off, is shown to have acted in bad faith towards appellees with respect to their claim against Meacham, certainly warrants a more rigid scrutiny of the trustee's conduct, and the facts immediately connected with the sale, than would otherwise be deemed necessary. In a case of this character, the court should certainly act more promptly and for less cause than in a case where there was nothing to cast a suspicion upon the good faith of the trustee's conduct.

There is one thing evident, that the trustee did not, in conducting the sale, treat the lots included in the trust, and not purchased by Steele under appellees' decree, as the primary

fund for the payment of what remained due under the trust deed. There was no effort on his part to make them, as a distinct property, bring the amount of appellant's claim. The lots not belonging to appellees should have been offered separately, unless some good reason appeared to the contrary, and if they failed to sell when thus offered, they should then have been offered as a whole. The trustee did not do this, but on the contrary he treated the whole property as a common fund.

For the reasons stated, and others that might be mentioned, we are of opinion that this sale should have been set aside; not only as to the eight lots purchased by appellees, but as to the whole of the property embraced in the trust deed. For, as we have already seen, that portion of the property covered by the trust deed and not purchased by appellees must be regarded as the primary fund out of which the indebtedness to appellant should be paid, and therefore appellees have a vital interest in having that part of the property fairly sold and converted into money, so as to protect that purchased by them as far as possible. And in conducting the sale the trustee, if it can be done without manifestly endangering appellant's security, should entirely exhaust that part of the property before selling any portion of that belonging to appellees.

It results, from what we have said, that so much of the decree of the court as directed the master to ascertain what part, if any, of the indebtedness to appellant was properly a charge upon the lots belonging to appellees, was not proper. Instead of this the circuit court should, as we have already stated, have set aside the entire sale, and ordered the trustee to proceed again under the trust deed and re-sell the property in the manner we have stated.

In view of the great difference of opinion with respect to the value of the property, there would necessarily be much uncertainty in determining what particular part of the in-

debtedness, or whether any part of it, should be made a charge upon the lots belonging to appellees.

The judgment of the Appellate Court, therefore, so far as it affirms so much of the decree of the circuit court as we have just stated was improper, will be reversed, but in every other respect the same is affirmed, and the cause is remanded to the Appellate Court, with directions to modify its judgment so as to conform to the views here expressed, and remand the cause to the circuit court for further proceedings in conformity with this opinion. The costs in this court will be equally divided between the parties.

*Judgment affirmed in part, and in part reversed.*