**Louis BANKS, Jr., Appellant,**

v.

**H. T. TAYLOR, Sr., Appellee.**

No. 14422.

Court of Civil Appeals of Texas.

Houston.

Oct. 29, 1964.

Rehearing Denied Nov. 19, 1964.

Frank B. Brooks, Jr., Austin, for appellant.

Spiner, Pritchard & Thompson, Clark G. Thompson, Houston, for appellee.

WERLEIN, Justice.

This suit was brought by appellee, H. T. Taylor, Sr. to establish and confirm his ownership of 1200 shares of the capital stock of Banks Transportation Co., which had been pledged by Louis Banks, Jr., to secure the payment of his two promissory notes dated December 17, 1959, such stock having been bought by appellee at private sale on April 4, 1963 upon default in the payment of said notes. Appellee also sought to have such stock issued in his name, and to require the receiver previously appointed by the court to prepare and submit a final accounting of his receivership. At the conclusion of the trial before a jury, the court, upon appellee's motion for an instructed verdict, granted same and later decreed that the sale of said stock be ratified and confirmed in all things, that Banks Transportation Company issue a new certificate or certificates to appellee representing 1200 shares of the Common Stock of such company, that the receiver turn over to the new board of directors of Banks Transportation Company all assets and property in his hands, and that the claim of the intervenor be denied. Only Louis Banks, Jr. has appealed.

Appellant contends that the trial court erred in rendering an instructed verdict in favor of appellee because there was no evidence and also insufficient evidence to show a valid sale of such pledged stock and because there were fact issues raised with respect to whether the sale was a valid sale on account of appellee's failure to give public notice and to seek bidders, and also with respect to whether appellee paid the amount he bid for the stock. Appellant also claims that the court erred in not rendering an instructed verdict in his favor because appellee failed to prove that he made any effort to get the best possible price for the pledged stock, and because appellee failed to prove a valid sale in that he never paid or gave credit for the amount he bid.

On December 17, 1959, Louis Banks, Jr., executed and delivered a note in the sum of $26,206.53 to appellee as an individual, and another note in the sum of $9,082.11 payable to appellee as agent for the Taylor Lumber Company, which latter note became the property of appellee individually prior to the filing of this suit. Each of such notes was secured by the pledge and collateral assignment of stock certificate No. 1 for 1200 shares of stock in Banks Transportation Company to appellee. Each note contained the following provision:

"In the event of non-payment of this note at maturity, however the same is brought about, the holder hereof is hereby invested with full authority to use, transfer, or sell the said pledged property, or any part thereof, or to cause the same to be done at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the said holder hereof may deem best, and the holder of this note is authorized to purchase said collateral when sold for his own protection and the proceeds of such sale, transfer, or hypothecation shall be applied to the payment of this note, together with all interest, attorney's fees and costs. The surplus, if any, after payment of this note, together with all charges above stated, shall be paid to the maker of this note, and if the proceeds of the above sale shall not be sufficient to pay this note, the maker hereof agrees to make good any deficit."

On March 19, 1963, the attorneys for appellee wrote the said Louis Banks demanding full payment of both notes on or before April 4, 1963, advising that the notes had been turned over to them for collection because of default in the payment thereof. On the same day, said attorneys wrote the following letter to appellant:

"This is to notify you that the 1200 shares of common stock of Banks Transportation Company represented by Certificate No. 1, will be sold at 11:00 o'clock A.M. Thursday, April 4th,

1963. This is the stock you pledged as collateral, securing those two certain promissory notes payable to the order of H. T. Taylor and the Taylor Company in the principal amounts of $26,-206.53 and $9,082.11 respectively, dated December 17th, 1959, which notes H. T. Taylor and the Taylor Company have elected to mature.

"The sale will be held and take place in the Lobby at the Main San Jacinto Street entrance of the Harris County Court House, 301 San Jacinto Street, Houston, Texas. Either you or such other parties as you may locate may be interested in purchasing such stock at such sale."

On April 4, 1963, at approximately 11 a. m., appellee and his two attorneys, Charles Pritchard and Clark Thompson, went to the Court House, where one of such individuals read the letter of March 19, 1963 notifying Mr. Banks of the sale, and called for bids, whereupon appellee bid $5,000.00 for the 1200 shares of stock. Such stock was then struck off to appellee. Subsequent to this sale, appellee brought the present suit which was filed April 25, 1963, alleging, among other things, that "On April 4, 1963, said 1200 shares of stock was sold at public auction to the highest bidder for cash before the court house door of Harris County, Texas, and plaintiff purchased such 1200 shares of stock at such sale for $5,-000.00 that being the highest and best bid for the same." Appellant alleged in his sworn amended answer a general denial, other matters not relevant to the issues upon which appellant relies on this appeal, and that "any purported sale under the terms of these notes allegedly made by this Plaintiff should be set aside and held null and void." No other allegation of any kind with respect to such sale was made by appellant in his answer or prayer.

It is appellant's contention that by virtue of such general denial, validity of the trustee's sale was put in issue, and that there being no presumption of the validity of such sale, it was necessary for appellee to prove each element of a proper sale. Smith v. Allbright, Tex.Civ.App., 279 S.W. 852, aff'd Tex.Com.App., 288 S.W. 178. The notes gave appellee the option to sell the stock at either a public or a private sale. No notice was given of the sale in question other than that given to appellant. The attorney for appellee testified that he did not "intend whether it be public or private." It is our view that the sale was a private sale made in a public place. The pledgee was authorized to buy in the stock whether the same was sold at public or private sale. It being a private sale, it was incumbent upon appellee to show that he exercised at least ordinary care and diligence to obtain the best possible price for the collateral, especially since the sale was made to himself. In King v. D. Sullivan & Co., Tex.Civ.App.1906, 92 S.W. 51, the court said:

"The pledgee of commercial paper who takes it as collateral security holds it as trustee for the pledgor as well as for himself (Byles' Bills, 177; Randolph, Com. Paper, § 795) in furtherance of the purpose for which the pledge was made, and, though he be expressly authorized by the pledgor to sell and appropriate the proceeds towards the payment of the debt it was pledged to secure, he is nevertheless his trustee, charged in the execution of his trust (as are all trustees) with the utmost good faith towards his cestui que trust. The express power given him by the pledgor to sell makes him the latter's agent, and, in the execution of the power, though it authorizes him to sell to a member of his firm, his duty as trustee, as well as agent, requires him to exercise, at least, ordinary care and diligence to obtain the best possible price for the collateral; and, if he make such sale, it is incumbent upon him to show that he has exercised such care and diligence, and a fortiori, is this the case when the sale is made to a member of his firm. * * *."

In King v. Boerne State Bank, Tex.Civ. App.1913, 159 S.W. 433, writ ref., which was a suit for conversion of property that had been pledged, the court said:

"The pledgee, though having the power by contract to sell the collateral at private sale without notice to the pledgor, cannot escape the duty resting upon him as a trustee to conduct the sale fairly and in good faith, and in such a way as to subserve not only the rights he has, but also the interest of the pledgor. Colebrook on Collateral Securities, p. 215; 31 Cyc. p. 877(6); King v. D. Sullivan & Co., [Tex.Civ.App.] 92 S.W. 51; Uncle Sam's Loan Office v. Emery, 49 Tex. Civ.App. 236, 107 S.W. [1155] 1157; Oriental Bank [of New York] v. Western Bank & Trust Co., Tex.Civ.App., 143 S.W. 1176; Gillet v. Bank, 160 N.Y. 549, 55 N.E. 292; [Laclede Nat.] Bank v. Richardson, 156 Mo. 270, 56 S.W. 1117, 79 Am.St.Rep. 528."

The Supreme Court of Alabama in Coleman v. Solomon, 225 Ala. 407, 143 So. 576, held:

"The burden is upon the mortgagee purchasing at his own sale under a power to show that the sale was fairly and openly made, in strict compliance with the power, and that the price paid was not so clearly and grossly inadequate as to raise a presumption of bad faith."

The court in Reisenberg v. Hankins, Tex.Civ.App., 258 S.W. 904, error dism., said:

"It is declared that in giving the notice of sale the mortgagee is required to act in a business-like manner, with a view of obtaining as large a price as he reasonably can, with due diligence on his part, and in common fairness to all others interested, and that in any matter left to his discretion there must be a fair and honest exercise of his judgment. Givens v. McCray, 196 Mo. 306, 93 S.W. 374, 113 Am.St.Rep. 736; Meacham v. Steele, 93 Ill. 135. Because sales by mortgagees under powers are much liable to abuse, they are most jealously watched by courts of equity, and upon slight proof of unfair conduct they will be set aside."

The law is well settled that there is no presumption that a private sale under a power was fairly and openly made. In the instant case the evidence shows that the appellee gave notice to appellant of the time and place where the sale would be conducted. The testimony, however, is uncontroverted that neither appellee nor his attorneys made any effort whatever (other than the notice to appellant) to negotiate with anyone with respect to buying the property that had been pledged, or to have anyone bid at the sale. The attorney for the intervenor, Mr. Brooks, had on several occasions prior to the notice of sale talked with appellee with reference to the property and had mentioned the amount of $25,000.00 or $30,000.00, thus indicating that he might be interested in purchasing the property. Notwithstanding this, appellee failed to give Brooks or anyone else, other than appellant, any notice as to the time and place of the sale. In Kolbo v. Blair, Tex.Civ.App.1964, 379 S.W.2d 125, the court used the following language:

"It is his [trustee's] duty to sell at the highest possible price; if he purchases, his interest would be to purchase at the lowest possible price; as seller and purchaser he is charged with the possibility of an adverse interest. In such case the court will examine such sale from its four corners and require the mortgagee to prove by clear and convincing evidence that such sale was fairly and honestly conducted in all respects. The evidence was further undisputed, in fact the trial court specifically found, that the sale was conducted without soliciting or inviting bids of any kind or character of any person whomsoever."

It is true that in the Kolbo case the mortgagee who elected to sell at private sale, gave no notice of any kind to the mortgagors of the sale, and also that the mortgagees purchased the property at the sale, although the mortgage did not give them any express authority to do so. In the instant case notice was given the mortgagor, but the sale was conducted without soliciting or inviting bids of anyone other than the mortgagor. It is our view that at a private sale such as in the present case, it is the duty of the pledgee to exercise reasonable care and diligence to sell at the highest possible price. In order to do this, it would be necessary for him to make some effort to obtain other parties who might be interested in purchasing the stock at such sale.

In Cole v. Manufacturers Trust Co., 164 Misc. 741, 299 N.Y.S. 418, the court defined the word "sale" as a sale where third parties either bid or are at least given an opportunity to bid and to become purchasers. The court further said that as a trustee the pledgee was duty bound to make every reasonable endeavor to obtain the highest price possible, and not merely the market price. There is no evidence of probative force in the record, other than the notice to appellant, that any effort was made by appellee to obtain the highest possible price for the stock in question. Although appellee testified that he thought there were other bids besides his bid, his testimony was so indefinite and uncertain that little if any credence can be given it. Each of his attorneys who were present testified that he could recall only the one bid of $5,000.00. Neither of the notes shows that $5,000.00 was paid or credited thereon.

The demand for payment of the notes, which was mailed March 19, 1963, shows that the balance of the principal due on the $26,206.53 note was $21,411.33 as of April 4, 1963, and on the $9,082.11 note, $5,514.93. After the sale of April 4, 1963, appellee made an affidavit under date of September 24, 1963 in connection with his motion for a summary judgment, in which he swore that no payments had been made on either note since September of 1960, and that as of September 24, 1963 the balance of principal due on the larger note was $21,411.33, being the exact amount of the unpaid principal of the note as of April 4, 1963, and on the smaller note the balance of principal was $5,370.67. This indicates that the $5,000.00 bid made at the sale was not paid or credited on either note prior to September 24, 1963. Moreover, the bill of sale of the stock executed by H. T. Taylor to himself is not dated although the notarial acknowledgment thereon, which bears no notary seal, is dated January 4, 1963, three months before the sale. If the date was in error and it was intended to be January 4, 1964, then such bill of sale was not executed until two days before this case went to trial. It is true that the court in its judgment, without specifically finding that the $5,000.00 had been paid, decreed that the $5,000.00 paid by appellee for the stock be and constitute a $5,000.00 credit against the unpaid balance of the two notes. We find, however, no evidence in the record that the $5,000.00 was paid, other than the acknowledgment of receipt thereof in the undated bill of sale from H. T. Taylor to himself.

We are of the opinion, in view of appellee's failure to give any notice of the sale other than to appellant, that there is at least a fact issue as to whether appellee exercised ordinary care and diligence to obtain other bidders at the sale and to obtain the highest possible price for the stock. It is also our view that there is at least a fact issue as to whether the amount bid by appellee at the sale was ever paid or credited against the indebtedness in question until the court decreed that the amount be so credited. The determination of such fact issue might have an important evidential bearing upon whether there was a genuine sale of the stock. Moreover, since this suit was not brought on the notes or indebtedness, we fail to see any occasion or ground for the court to decree that the $5,000.00 be credited thereon.

Appellee has undertaken to distinguish between the instant case and cases in which a deficiency judgment was sought. We are unable to see any valid distinction insofar as the sale of pledged property is concerned. In either case, it would be in the interest of the mortgagor to have the pledged property bring the largest amount possible upon the sale thereof. The fact that in the instant case no deficiency judgment was sought will not prevent appellee from bringing another suit to obtain such judgment. If appellee brought suit to recover a deficiency, he would doubtless claim that the deficiency consisted of the unpaid balance due on the notes, less the sum of $5,000.00 bid at the sale.

Appellant did not plead that the sale was unfair in so many words but he did plead in his sworn answer that any purported sale under the terms of the notes, allegedly made by appellee, should be set aside and held null and void. There was no exception to such pleading. It is our view that the burden was on appellee to establish that a valid sale had been made and that he had legally acquired the stock in question. See Lang v. Harwood, Tex. Civ.App.1940, 145 S.W.2d 945. His whole suit was bottomed on the proposition that he had bought the stock at the trustee's sale and was the legal owner thereof. He asked the court to compel recognition of such ownership and rights incident thereto. This was done by the court in its judgment decreeing that the sale "be and is in all things ratified and confirmed * * *" Other relief prayed for by appellee and granted in the court's judgment was necessarily dependent upon the ratification and confirmation by the court of the sale in question. It is our view that there is in the record evidence raising fact issues with respect to the fairness and validity of the sale which made an instructed verdict improper regardless of whether appellant or appellee had the burden of proof on the issue of fairness.

In view of the likelihood of another trial of this case, we consider it proper to add that the determination of whether valid by-laws had ever been adopted or recognized by the company, and to whom the assets of the corporation should be turned over by the receiver, involves fact issues which, depending upon the evidence, will probably have to be passed upon by the jury. Appellee in his petition in effect sought a determination of such matters. The court by discharging the jury prevented jury findings with respect thereto. In fact, there was insufficient evidence adduced at the trial to warrant submission of such issues. Hence the case was not fully developed and for such reason also, it must be remanded for a new trial. The assessment of the receiver's fee and his expenses must await final decision. The judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.