COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

GERMAN CHAVIRA AND
ALEJANDRO FABELA, BOTH          §          No. 08-12-00169-CV
INDIVIDUALLY AND BOTH D/B/A
EL PASO PAVEMENT SPECIALIST     §          Appeal from
AND EL PASO PAVEMENT
SPECIALIST, LLC,                §          County Court at Law No. 5

         Appellants,     §          of El Paso County, Texas

v.                              §          (TC # 2011-397)

QUARRY HILLS MANAGEMENT,        §
LLC,                            §

         Appellee.       §

## O P I N I O N

In this appeal we are asked to review a trial court's final judgment and two contempt orders which were entered following two show cause hearings. The contempt proceedings resulted from the Appellants' alleged refusal to comply with an agreed temporary injunction. For the reasons that follow, we lack jurisdiction to review the contempt rulings and the judgment which is based on the contempt findings on direct appeal.

### FACTUAL SUMMARY

Quarry Hills Management, LLC (Quarry Hills) filed suit against German Chavira and Alejandro Fabela, individually and doing business as El Paso Pavement Specialist and El Paso

Pavement Specialist, LLC (collectively referred to as EPPS) on February 1, 2011. The suit alleged that Quarry Hills had retained EPPS as a subcontractor on three federal construction projects. The suit raised a number of claims, including business disparagement, breach of contract, tortious interference with contractual relationships, fraud, and conversion.

In particular, Quarry Hills complained that EPPS had not turned over "certified payroll" forms for several projects. On federal construction projects, certified payroll forms are one of the items that a contractor must submit to the owner to obtain final payment due under the job. 40 U.S.C. § 3145(a) (2014). The original petition sought a temporary restraining order and temporary injunction requiring EPPS to turn over certified payroll forms for three projects identified as "IBCT2-POV (Contract #W912HY-09-D-0004), BCT-3-CAB-POV (Contract No W912HY-09-000-0003) and/or BCT-3-POV (Contract No W912HY-09-D-0009,0002)." Upon the filing of the suit the trial court issued a temporary restraining order, conditioned on the posting of a $500 bond, which required that the certified payroll forms for the three specified contracts be turned over to Quarry Hills immediately. The temporary restraining order was extended by a second ex parte order of the trial court which recited that the bond had been posted. The trial court extended the restraining order three additional times by agreed orders approved by Quarry Hills and counsel for at least one of the Appellants.[1] The agreed extensions continued the temporary restraining order in force through a temporary injunction hearing set for June 6, 2011. Quarry Hills and EPPS mediated their disputes and reached a partial settlement which included an agreement by EPPS to prepare and file by May 20, 2011 certain certified payroll records, identified in a letter which is not of record. The mediation agreement contemplated that the parties would continue the June 7, 2011 temporary injunction hearing.

---

[1] None of the Appellants had filed an answer or formal appearance during this time period. An attorney identified in the extension orders as "counsel for Defendant" approved each of the extension orders as to form.

That hearing was reset to August 30, 2011 and the parties mutually agreed to extend the temporary restraining order until the date of that hearing. EPPS's initial counsel of record withdrew on August 5, 2011 and new counsel appeared on August 26, 2011.

At the temporary injunction hearing on August 30, the parties through counsel announced an agreement on the issuance of a temporary injunction. The agreement which was reduced to a written order recited that Quarry Hills would suffer irreparable injury unless the relief sought was granted and that the bond had already been posted. The agreed temporary injunction required that certified payroll records from two contracts be delivered by September 19, 2011.[2] At the August 30 hearing, the trial judge instructed EPPS' counsel to inform Appellant German Chavira that it is "very, very important -- and I'm going to hold his feet to the fire -- that he produce those records on September 19th." EPPS counsel agreed to do so.

Quarry Hills filed a first "Plaintiff's Motion for Contempt and for Sanctions" on September 23, 2011. The motion contended that the payroll records had not been produced by the September 19 deadline in the temporary injunction. The motion was supported by the affidavit of David Venegas who swore that the United States Army Corp of Engineers was still demanding the certified payroll records; that failure to provide the forms was preventing the project from being closed out; and the situation was jeopardizing Quarry Hills' ability to contract for future federal projects. A show cause hearing was set for October 3, 2011.

German Chavira appeared at the October 3 hearing and testified as a partner of El Paso Pavement Specialist, LLC. It would have been evident to the trial court that there was some confusion amongst the parties as to the correct descriptive terms used to identify the different

---

[2] The projects were identified in this Order as: "BCT-3-CAB-POV (Contract No W91211Y-09-000-0003) and/or BCT-3-POV (Contract No W91211Y-09-D-0009,0002)." The temporary injunction thus differs from the temporary restraining order in that one project was deleted and in the other two, an "H" in the contract number was replaced with "11."

3

projects at issue. The agreed temporary injunction required EPPS to produce certified time records for project "BCT-3-CAB-POV (Contract No W91211Y-09-000-003) and/or BCT-3-POV (Contract No W91211Y-09-D-0009,0002)." German Chavira testified to performing work on project "BCT-POV." He brought some records to the hearing, prepared by a third party identified as "TNT," which combined projects "BCT-3-POV and "CAB." Quarry Hills' counsel contended that it really needed the certified payroll records for projects "BCT-POV" and "BCT-CAB-POV" and contended there was a third project called "BCT-3" which was done for another entity but for which payroll data had been intermingled.

Partly to resolve any confusion over the project descriptors, the trial court ordered the parties to meet the next day at a time and place certain. A third party auditor who had come to the hearing with Venegas was ordered to attend as well. German Chavira was ordered to bring all of his back up paperwork on the jobs, including time cards and all notes reflecting who was working on the two projects that he did for Quarry Hill. Chavira indicated that his secretary had provided the original time sheets to TNT for it to prepare what reports it did. The show cause hearing was reset for two days later on October 5.

When the parties reconvened the show cause hearing on October 5, EPPS' counsel informed the trial court that the meeting the day before had lasted about ten minutes. EPPS' counsel determined that the meeting would be fruitless without TNT's participation. None of the back-up records, such as time cards, were brought to the meeting. Instead, EPPS' counsel indicated that he had just recently made contact with TNT and was intending to have it assist in preparing the certified payroll records. The trial court recessed the hearing to permit EPPS' counsel to confer with TNT to insure it would indeed meet with EPPS to prepare the certified payroll records. After the recess, EPPS' counsel represented to the trial court that TNT would

4

work with German Chavira to prepare the certified payroll records, and that Chavira would assist in that effort.

The trial court then ordered that EPPS pay $1,350 in attorney's fees and $150 in costs as sanctions. EPPS was to produce the certified payroll records on or before October 15, 2011 and failing that, EPPS would be fined $300 per day until the records were delivered. The trial court warned Chavira, who was in the court room, that he needed to cooperate and that he risked arrest and confinement. The trial court specifically informed him:

> The Court: That's a very drastic measure, but if that's what I have to do, Mr. Chavira, I'm going to do it. So, you'd better cooperate. I looked over there a little while ago and you were smiling and laughing. This is not a smiling and laughing matter. You've pushed me to the limit. Do you understand that, Mr. Chavira?
>
> The Defendant: Yes, sir.

On January 6, 2012, Quarry Hills filed a motion to compel discovery responses. On January 17, 2012, it filed Plaintiff's Second Motion for Contempt and Sanctions. The trial court signed an order setting a show cause hearing on January 30, 2012. The order cites each of the Appellants for failure to produce the "Certified Payroll on the CAB-POV and the BCT-3-POV projects" and failure to pay the monetary sanctions ordered on October 5, 2011. The record does not show service of the show cause order personally on any of the Appellants. Their counsel, however, did file a response to the motion and appeared at the hearing on January 30, 2012.

EPPS' response to the contempt motion raised several procedural challenges to the show cause hearing, including lack of personal service of the show cause order on any of the Appellants. The response also asserted that EPPS should not be required to produce any of the certified payroll records until EPPS was paid sums allegedly due it. Along with the response, EPPS served a notice of deposition for a corporate representative for Quarry Hills, requiring

production of twenty-two categories of documents.  The deposition was set three days from the date of filing the notice itself.

Both the show cause hearing and a motion to compel were set for January 30, 2012.  At the hearing, EPPS' counsel restated its position that once the certified payroll records were produced, the project would be "closed out" and EPPS would lose its ability to seek what it claimed it was owed.  EPPS then orally moved to increase the bond to $250,000 which was the amount of its claim.  Effectively, EPPS was arguing first that it could create the certified payroll records, but that it did not want to until it was paid or the bond was increased.  It also argued that it could not create the certified payroll records without assistance.

The trial court noting, that it had "bent over backwards" more than in any other case, granted the motion for contempt and sanctions.  It signed two orders on January 30, 2012.  The first, labeled as an "Order," compelled EPPS to pay $33,600 to Quarry Hills and struck EPPS' pleadings.  The trial court apparently arrived at this amount by multiplying the $300 per day fine for not producing the certified payroll reports by the number of days between October 15, 2011 and January 30, 2012, and by adding the $1,500 attorney's fee and costs that had been awarded at the October 5, 2011 hearing.  The order contains no finality language which would indicate that all issues between all parties had been finally resolved.  But on the same day, the trial court signed a "Judgment" which also awards Quarry Hills $33,600 against EPPS based on all of Quarry Hills' pleaded causes of action.  The judgment includes pre-judgment and post-judgment interest as well court costs.  It recites that "[t]his Judgment finally disposes of all parties and all claims and is appealable."

In this direct appeal, EPPS raises sixteen issues.  Issue One complains that the trial court abused its discretion by imposing death penalty sanctions in a contempt proceeding.  Issues Two,

6

Seven, Ten, Twelve, Fourteen, and Fifteen raise procedural defects with the agreed temporary injunction, or the procedural issues attendant to the show cause hearings. Issues Eight, Nine, Eleven, and Thirteen challenge the sufficiency of the evidence to support a finding of contempt. Issues Three through Six contend in various ways the judgment cannot be supported as discovery sanction. Issue Sixteen generically asserts that EPPS was harmed by the contempt orders and Judgment.

**JURISDICTION**

EPPS filed its notice of appeal complaining of both the Order and Judgment signed on January 30, 2012. Many of its issues also attack the October 5, 2011 contempt order awarding $1,500 in attorney's fees and costs, and assessing a $300 per day fine for continued non-compliance with the agreed temporary injunction.

Quarry Hills initially contends that this Court lacks jurisdiction to hear any part of this appeal because contempt orders, even if final, are not reviewable on direct appeal. The Texas Supreme Court has held a number of times that a contempt order cannot be reviewed on direct appeal. *Texas Animal Health Commission v. Nunley*, 647 S.W.2d 951, 952 (Tex. 1983); *Deramus v. Thornton,* 160 Tex. 494, 333 S.W.2d 824, 827 (1960)(orig. proceeding)("We have uniformly held in this State . . . that the validity of a contempt judgment can be attacked only collaterally and that by way of habeas corpus."); *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (Tex. 1956). A contempt order involving incarceration must be reviewed through an application for writ of habeas corpus. *Ex parte Williams*, 690 S.W.2d 243, 243 n.1 (Tex. 1985). When the contempt order only involves money fines, and habeas relief would be unavailable, mandamus is the appropriate procedure for obtaining review of a contempt order. *In re Long,* 984 S.W.2d 623, 625 (Tex. 1999)(orig. proceeding)(per curiam)("Contempt orders that

7

do not involve confinement cannot be reviewed by writ of habeas corpus, and the only possible relief is a writ of mandamus."); *Rosser v. Squier,* 902 S.W.2d 962, 962 (Tex. 1995)(orig. proceeding)(per curiam)(issuing mandamus to invalidate fine exceeding $500 limit imposed by Government Code when no incarceration was at issue); *Hernandez v. Hernandez,* 318 S.W.3d 464, 466 n.1 (Tex.App.--El Paso 2010, no pet.); *In re Office of Atty. Gen. of Texas*, 215 S.W.3d 913, 916 (Tex.App.--Fort Worth 2007, no pet.).

Whether the order complained of is final or not does not alter this equation; even a final contempt order is not subject to direct appeal. *Wagner v. Warnasch*, 295 S.W.2d at 893 ("If, by a liberal construction, the order should be held to be a judgment of contempt, it would, nevertheless, not be an appealable order."); *Beeler v. Fuqua,* 351 S.W.3d 428, 433 (Tex.App.-- El Paso 2011, pet denied). But certainly, if a final judgment is entered in a proceeding that also might include some contempt issue, the non-contempt portion of final judgment is directly reviewable. *Richey v. Bolerjack*, 589 S.W.2d 957, 959 (Tex. 1979). In *Richey*, for instance, the proceeding involved a request to modify a child support order, and a contempt motion for the failure to pay past child support. *Id*. at 958. The court of appeals concluded it could not hear any part of the case because the trial court had not ruled on the contempt motion. *Id*. The Texas Supreme Court reasoned that the trial court judgment was final and remanded the case to the court of appeals to hear the appeal. *Id*. at 959. On remand, the court of appeals decided the modification and child support issues, but did not decide any issue related to failure of the trial court to rule on the contempt motion. *Richey v. Bolerjack*, 594 S.W.2d 795 (Tex.Civ.App.-- Tyler 1980, no writ). The portion of a direct appeal from a final judgment which challenges a contempt finding should be dismissed; any other remaining issues should be decided on the

merits. *Metzger v. Sebek*, 892 S.W.2d 20, 55 (Tex.App.--Houston [1st Dist.] 1994, writ denied), *cert. denied*, 516 U.S. 868, 116 S.Ct. 186, 133 L.Ed.2d 124 (1995).

These defined avenues for review have formed a "judicial path so well landmarked" that the Texas Supreme Court has been reluctant to depart from it. *Deramus,* 333 S.W.2d at 827. This court, and our sister courts of appeals, have followed that path on many occasions. *E.g.*, *Beeler,* 351 S.W.3d at 433; *Hernandez,* 318 S.W.3d at 466 n.1; *Tracy v. Tracy*, 219 S.W.3d 527 (Tex.App.--Dallas 2007, no pet.); *Vernon v. Vernon*, 225 S.W.3d 179 (Tex.App.--El Paso, 2005 no pet.); *Cadle Co. v. Lobingier,* 50 S.W.3d 662, 671 (Tex.App.--Fort Worth 2001, pet. denied)(en banc)("A contempt judgment is reviewable only via a petition for writ of habeas corpus (if the contemnor is confined) or a petition for writ of mandamus (if no confinement is involved)").

EPPS responds to this line of cases by claiming that when the trial court utilizes non-traditional contempt remedies, such as here when the trial court strikes an answer, that ruling may be attacked by direct appeal. EPPS relies on *Roloff Evangelistic Enterprises, Inc. v. State*, 598 S.W.2d 697 (Tex.Civ.App.--Austin 1980, no writ) which reviewed a civil penalty awarded in a contempt proceeding by direct appeal. The Austin Court of Appeals reasoned that the civil penalty at issue was actually a fine authorized by the Child Care Licensing Act, rather than a fine arising out of a contempt proceeding. *Id*. at 700. In other words, while the judgment said it is was a contempt order, it really was something else. Later, the Corpus Christi Court of Appeals in *State v. Barraza*, 742 S.W.2d 784, 785 (Tex.App.--Corpus Christi 1987, no writ) cites *Roloff* as support for an exception to the rule of no direct appeals from a contempt order. The exception arises "where the relief prayed for in the motion and afforded in the judgment is not of the character associated with contempt proceedings." *Id*. at 785.

Were we writing on a clean slate, we might be persuaded that an exception such as stated in *Barraza*, or something like it, would make for good policy. We are certainly troubled here by the prospect of what appears on its face to be a final judgment, and denominated as being "appealable," but which cannot be directly appealed. Nonetheless, we are persuaded that the court in *Barraza* misread the rationale in *Roloff* to create an exception where none existed. *Barraza* itself was not applying any exception, so its discussion of *Roloff* was dictum. Neither *Barraza* nor *Roloff* have been cited in support of this "exception" in the many years since they were decided. Constrained by the prior precedent of the Texas Supreme Court and this court, we decline to venture forth to create a new exception to the rule that contempt orders must be addressed collaterally by either habeas corpus or mandamus.

Moreover, we note that in the record below that there is an order dated October 7, 2011 finding Appellants in contempt and assessing attorney's fees, costs, along with a daily fine for non-compliance. The record contains a January 30, 2012 order assessing a $33,600 judgment consisting of the unpaid attorney's fees and costs, and the sum of the accumulated daily fines. Even if the final judgment here were subject to direct review, we would decline to hear issues surrounding the two other contempt orders for want of jurisdiction. *See*, *Metzger,* 892 S.W.2d at 55)(dismissing for want of jurisdiction those portions of appeal pertaining to contempt finding). And any relief that this court might issue with respect to the final judgment would therefore leave intact the almost identical contempt penalties which are found in the January 30, 2012 order. Unless EPPS validly challenges both the final judgment and the January 30, 2012 order, any error associated with challenging only one of the orders is harmless.

Accordingly, we lack the jurisdiction to hear EPPS's Issue One, Two, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen as each of these issues seek to

challenge by direct appeal the trial court's rulings arising out of contempt proceedings and dismiss the appeal with respect to these issues on appeal.

## DISCOVERY SANCTIONS

In Issues Three, Four, Five, and Six, EPPS also challenges the judgment to the extent it was based on a discovery sanction authorized under TEX.R.CIV.P. 215. In varying ways, EPPS contends the "death penalty" sanction cannot stand under the safeguards set out in *TransAmerican Natural Gas v. Powell*, 811 S.W.2d 913 (Tex. 1991) and its progeny. EPPS no doubt raises these issues because at the second show cause hearing the parties were concurrently hearing a motion to compel. But as Quarry Hills concedes in its briefing, the trial court never entered any orders on the motion to compel and the judgment and contempt orders were not based on discovery abuse. Rather, the judgment and contempt orders were based on the failure to *create* and provide a certified payroll form. In fact, a discovery request can only seek a document that is in a party's possession, custody or control; it cannot compel a party to create a document where none exists. *In re Colonial Pipeline Co.,* 968 S.W.2d 938, 942 (Tex. 1998). Because the challenged orders were not the result of a discovery sanction, we overrule Issues Three, Four, Five, and Six. If properly challenged, the judgment and the contempt orders will survive, or not survive, based only on the procedural and substantive issues encompassing EPPS' apparent refusal to create and provide the certified payroll forms as it agreed to do in a temporary injunction. We affirm the judgment of the trial court below.


December 1, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)